## UNITED STATES *v.* TUCKER

No. 70–86.  Argued November 11, 1971—Decided January 11, 1972

*Allan A. Tuttle* argued the cause for the United States.   On the brief were *Solicitor General Griswold, Assistant Attorney General Wilson, Richard B. Stone, Beatrice Rosenberg,* and *Mervyn Hamburg.*

*William A. Reppy, Jr.,* by appointment of the Court, *post,* p. 935, argued the cause for respondent.  With him on the brief was *William A. Norris,* by appointment of the Court, 403 U. S. 930.

MR. JUSTICE STEWART delivered the opinion of the Court.

In 1953 the respondent, Forrest S. Tucker, was brought to trial in a federal district court in California upon a charge of armed bank robbery.  He pleaded not guilty.  Four female employees of the bank were called as wit-

nesses for the prosecution, and they identified the respondent as the robber. He testified in his own behalf, denying participation in the robbery and offering an alibi defense. To impeach the credibility of his testimony, the prosecution was permitted on cross-examination to ask him whether he had previously been convicted of any felonies. He acknowledged three previous felony convictions, one in Florida in 1938, another in Louisiana in 1946, and a third in Florida in 1950. At the conclusion of the trial the jury returned a verdict of guilty. In the ensuing sentencing proceeding the District Judge conducted an inquiry into the respondent's background, and, the record shows, gave explicit attention to the three previous felony convictions the respondent had acknowledged.[1] The judge then sentenced him to serve 25 years in prison—the maximum term authorized by the applicable federal statute, 18 U. S. C. § 2113 (d).

Several years later it was conclusively determined that the respondent's 1938 conviction in Florida and his 1946

---

[1] An FBI agent was present at the sentencing proceeding. The District Judge began the proceeding by stating, "I would like to have the Agent's testimony with respect to the prior convictions."

The agent testified, in relevant part, as follows: "As the defendant said, when he was a juvenile, I believe it was in 1938, he received a ten-year sentence in Florida. . . .

". . . He said there was five years and four months on the chain gang. . . . and he said he actually served two years beyond that. . . .

"In 1950 Mr. Tucker was sentenced to a five year term in the State of Florida, for, I believe it was burglary, and on January the 5, 1951, while in custody in the hospital, he escaped.

"In 1946 he was convicted in the State of Louisiana on a felony charge and given a term of 4 years.

". . . I believe it was a burglary."

conviction in Louisiana were constitutionally invalid. This determination was made by the Superior Court of Alameda County, California, upon that court's finding in a collateral proceeding that those convictions had resulted from proceedings in which the respondent had been unrepresented by counsel, and that he had been "neither advised of his right to legal assistance nor did he intelligently and understandingly waive this right to the assistance of counsel." [2]

Thereafter the respondent initiated the present litigation. Proceeding under 28 U. S. C. § 2255, he filed a motion in the Federal District Court in which he had been convicted in 1953, claiming that introduction at the 1953 trial of evidence of his prior invalid convictions had fatally tainted the jury's verdict of guilt. Upon consideration of the motion, the District Judge agreed that "the use of the constitutionally invalid prior convictions on cross-examination for impeachment purposes was error," but found that the error was harmless beyond a reasonable doubt, in view of the overwhelming trial evidence that the respondent had been guilty of the bank robbery. *Tucker* v. *United States,* 299 F. Supp. 1376. See *Chapman* v. *California,* 386 U. S. 18; *Harrington* v. *California,* 395 U. S. 250.

On appeal, the Court of Appeals for the Ninth Circuit agreed that it had been "firmly proved that the evidence of prior convictions did not contribute to the verdict obtained and that, with respect to the verdict of guilty, the error in receiving such evidence was therefore harmless beyond a reasonable doubt." It went on, however, to find that there was "a reasonable probability that the defective prior convictions may have

---

[2] The decision of the Superior Court of Alameda County is unreported, but the accuracy of that court's determination is not questioned. See *In re Tucker,* 64 Cal. 2d 15, 409 P. 2d 921; *Tucker* v. *Craven,* 421 F. 2d 139.

led the trial court to impose a heavier prison sentence than it otherwise would have imposed." Accordingly, the appellate court affirmed the refusal to vacate the conviction, but remanded the case to the District Court for resentencing "without consideration of any prior convictions which are invalid under Gideon v. Wainwright, 372 U. S. 335." 431 F. 2d 1292, 1293, 1294. The Government came here with a petition for a writ of certiorari, which we granted. 402 U. S. 942.

The Government asks us to reverse the judgment of the Court of Appeals insofar as it remanded this case to the District Court for resentencing. It argues that a federal district judge has wide and largely unreviewable discretion in imposing sentence, and that in exercising that discretion his relevant inquiry is not whether the defendant has been formally convicted of past crimes, but whether and to what extent the defendant has in fact engaged in criminal or antisocial conduct. Further, the Government argues, in view of other detrimental information about the respondent possessed at the time of sentencing by the trial judge, it is highly unlikely that a different sentence would have been imposed even if the judge had known that two of the respondent's previous convictions were constitutionally invalid. Accordingly, the Government concludes that to now remand this case for resentencing would impose an "artificial" and "unrealistic" burden upon the District Court.

It is surely true, as the Government asserts, that a trial judge in the federal judicial system generally has wide discretion in determining what sentence to impose. It is also true that before making that determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come. *United States* v. *Trigg,* 392 F. 2d 860, 864; *Davis* v. *United States,* 376 F. 2d 535, 538; *Cross* v. *United*

*States,* 354 F. 2d 512, 514; *United States* v. *Doyle,* 348 F. 2d 715, 721; *United States* v. *Magliano,* 336 F. 2d 817, 822; Fed. Rule Crim. Proc. 32 (a)(2). See *Williams* v. *New York,* 337 U. S. 241; *North Carolina* v. *Pearce,* 395 U. S. 711, 723. The Government is also on solid ground in asserting that a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review. *Gore* v. *United States,* 357 U. S. 386, 393. Cf. *Yates* v. *United States,* 356 U. S. 363.

But these general propositions do not decide the case before us. For we deal here, not with a sentence imposed in the informed discretion of a trial judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude. As in *Townsend* v. *Burke,* 334 U. S. 736, "this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue." *Id.,* at 741. The record in the present case makes evident that the sentencing judge gave specific consideration to the respondent's previous convictions before imposing sentence upon him.[3] Yet it is now clear that two of those convictions were wholly unconstitutional under *Gideon* v. *Wainwright,* 372 U. S. 335.[4]

We need not speculate about whether the outcome of the respondent's 1938 and 1946 prosecutions would necessarily have been different if he had had the help of a lawyer.[5] Such speculation is not only fruitless, but

---

[3] See n. 1, *supra.*

[4] The respondent's convictions occurred years before the *Gideon* case was decided, but the impact of that decision was fully retroactive. *Pickelsimer* v. *Wainwright,* 375 U. S. 2.

[5] It is worth pointing out, however, that to make the contrary assumption, *i. e.,* that the prosecutions would have turned out exactly the same even if the respondent had had the assistance of counsel, would be to reject the reasoning upon which the *Gideon* decision was based:

"[R]eason and reflection require us to recognize that in our

quite beside the point. For the real question here is not whether the results of the Florida and Louisiana proceedings might have been different if the respondent had had counsel, but whether the sentence in the 1953 federal case might have been different if the sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained.[6]

We agree with the Court of Appeals that the answer to this question must be "yes." For if the trial judge in 1953 had been aware of the constitutional infirmity of two of the previous convictions, the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding. Instead of confronting a defendant who had been legally convicted of three previous felonies, the judge would then have been dealing with a man who, beginning at age 17, had been unconstitutionally imprisoned for more than ten years, including five and one-half years on a chain gang.[7] We cannot agree with the Government that a re-evaluation of the re-

---

adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. . . . That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries." 372 U. S., at 344.

[6] The constitutional validity of the respondent's third conviction—in Florida in 1950—has not been determined. The Government states in its brief that it has been informed by the clerk of the Criminal Court of Records of Dade County, Florida, that the respondent had counsel at that trial. The respondent's brief states that the respondent has advised his present counsel that at the 1950 Florida proceeding he specifically asked the judge to appoint counsel for him because of his indigence and that the request was denied.

[7] See n. 1, supra.

spondent's sentence by the District Court even at this late date will be either "artificial" or "unrealistic." [8]

The *Gideon* case established an unequivocal rule "making it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one." *Burgett* v. *Texas,* 389 U. S. 109, 114. In *Burgett* we said that "[t]o permit a conviction obtained in violation of *Gideon* v. *Wainwright* to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case." *Id.,* at 115. Erosion of the *Gideon* principle can be prevented here only by affirming the judgment of the Court of Appeals remanding this case to the trial court for reconsideration of the respondent's sentence.

*The judgment is affirmed.*

MR. JUSTICE POWELL and MR. JUSTICE REHNQUIST took no part in the consideration or decision of this case.

MR. JUSTICE BLACKMUN, with whom THE CHIEF JUSTICE joins, dissenting.

The Court's opinion, of course, is a fine and acceptable exposition of abstract law. If I felt that it fit Tucker's

---

[8] As noted above, at 445, and emphasized in the dissenting opinion, the trial judge, in ruling upon the respondent's present § 2255 motion, held that the wrongful use of the invalid previous convictions to impeach the respondent's testimony at the 1953 trial was harmless error, in view of the overwhelming evidence that he was guilty of the bank robbery. But the respondent's guilt of that offense hardly "translates" into an "inescapable" assumption that the trial judge would have imposed a maximum 25-year prison sentence if he had known that the respondent had already been unconstitutionally imprisoned for more than 10 years. It would be equally callous to assume, now that the constitutional invalidity of the respondent's previous convictions is clear, that the trial judge will upon reconsideration "undoubtedly" impose the same sentence he imposed in 1953.

case, I would join it. The Court, however, fails to mention and to give effect to certain facts that, for me, are controlling:

1. At his armed bank robbery trial in May 1953 Tucker was no juvenile. He was 32 years of age and was represented by counsel. A reading of his trial testimony discloses that he was very knowledgeable indeed. Tucker testified on cross-examination at that trial not only as to the fact of three prior state felony convictions, but, as well, as to his engaging in the proscribed conduct underlying two of those convictions. He stated flatly (a) that in 1938 he broke into a garage and took a man's automobile, and (b) that in 1946 he broke into a jewelry store at night.[1] He also acknowledged that, while waiting for transportation to prison in Florida after the third con-

---

[1] "Q. . . . . You were convicted in Florida, were you not?

"A. Yes, I was.

"Q. For what?

"A. Automobile theft, breaking and entering.

"Q. What do you mean 'automobile theft, breaking and entering'?

"A. It boils down to this, I was 17 years old, broke into a man's garage, took his automobile, went joy riding in it, received a ten year sentence for it.

"Q. At the age of 17 you received a ten year sentence?

"A. Yes.

"Q. When was that?

"A. 1938.

"Q. You broke into a place and stole a car?

"A. Yes.

"Q. What kind of car did you steal?

"A. '36 Ford.

"Q. Tell us about your other convictions.

"A. 1946 I broke into a jewelry store.

.            .            .

"Q. Where?

"A. New Orleans.

"Q. Night or day?

"A. Night." Trial Transcript 161–162.

viction, he escaped and went to California using an assumed name.[2] Thus, wholly apart from formal convictions, Tucker conceded criminal conduct on his part on three separate prior occasions.

2. The judge who presided at Tucker's pre-*Gideon* trial for armed bank robbery in 1953 was the Honorable George B. Harris of the United States District Court for the Northern District of California. After Tucker's conviction by a jury Judge Harris imposed the 25-year maximum sentence prescribed by 18 U. S. C. §§ 2113 (a) and 2113 (d). Despite the interim passage of 16 years, Tucker's present petition, filed pursuant to 28 U. S. C. § 2255, also came before the very same Judge Harris, then Chief Judge of the Northern District. The judge denied relief on the ground that the error in the use, for impeachment purposes, of two constitutionally invalid prior convictions was harmless beyond a reasonable doubt (a) because the issue of guilt or innocence was not at all close, (b) because Tucker's testimony "had been successfully impeached by prior inconsistent statements made to the Federal Bureau of Investigation agents, and by rebuttal testimony which demonstrated that portions of [his] testimony [were] improbable and untrue," and

---

[2] "Q. Why did you use the name of Rick Bellew, if you did?

"A. Because I was a fugitive from Florida.

"Q. You were a what?

"A. A fugitive.

"Q. A fugitive from what?

"A. I had been sentenced to a term in Florida for the third conviction that you just brought up, and while waiting transportation to prison I was given a chance to—nobody was watching me, and I walked off down there and came out to California.

"Q. Where did you walk away from?

"A. I was having my appendix removed in the hospital . . . ." Trial Transcript 166.

". . . [H]e found me guilty and subsequently I escaped and came out here. . . ." Sentencing Transcript 230.

(c) because his "testimony was successfully impeached, and in fact, demolished by additional items." 299 F. Supp. 1376, 1378 (ND Cal. 1969). As to all this, on the issue of guilt, the Court of Appeals agreed, 431 F. 2d 1292, 1293 (CA9 1970), and this Court today does not rule otherwise.

Chief Judge Harris' § 2255 ruling translates for me into something completely inescapable, namely, that in 1953, wholly apart from the 1938 and 1946 convictions, he would have imposed the 25-year maximum sentence anyway. Surely Judge Harris, of all people, is the best source of knowledge as to the effect, if any, of those two convictions in his determination of the sentence to be imposed. Yet the Court speculates that, despite his identity and despite his obvious disclaimer, Judge Harris might have been influenced in his sentencing by the fact of the two prior convictions, rather than by the three criminal acts that Tucker himself acknowledged.

On remand the case presumably will go once again to Judge Harris, and undoubtedly the same sentence once again will be imposed. Perhaps this is all worthwhile and, if so, I must be content with the Court's disposition of the case on general principles. I entertain more than a mild suspicion, however, that this is an exercise in futility, that the Court is merely marching up the hill only to march right down again, and that it is time we become just a little realistic in the face of a record such as this one.

I would reverse the judgment of the Court of Appeals insofar as it remands the case to the District Court for resentencing.