**UNITED STATES of America**

v.

**Kenneth Arnold MILLER.**

No. A–73–59.

United States District Court, W. D. North Carolina.

July 24, 1973.

Mr. Miller proceeded pro se.

Keith Snyder, U. S. Atty., Asheville, N. C., for the United States.

## MEMORANDUM OF DECISION and ORDER

CRAVEN, Jr.,* Circuit Judge.

This is a petition to vacate, set aside, or correct sentence brought by Kenneth Arnold Miller pursuant to 28 U.S.C. § 2255. Proceeding *pro se*, Mr. Miller informally addressed the petition to me because I was his sentencing judge. I declined to consider it and remanded it to the district court. Thereafter, the United States Attorney, also proceeding informally, joined in Mr. Miller's request that I cause myself to be designated to sit as a district judge to consider and determine the petition. After discussion with Chief Judge Haynsworth and with Chief Judge Jones of this district, I agreed to do so and have been so designated.

This is a *Tucker* problem.[1] On May 12, 1966, in my then capacity as District Judge for the Western District of North Carolina, I sentenced Miller and his confederate, Carver, for bank robbery. Carver got ten years and has long since been successfully paroled. He carried the weapon used in the robbery, and in my opinion, was the more culpable of the two. Miller got eight years. I thought then, and think now, that he is not violence-prone, and probably would not deliberately harm another person, even to escape apprehension and punishment for a serious offense. Nevertheless, bank robbery is a serious matter, and I believe somewhat in the validity of the deterrent theory, despite there being much evidence to the contrary.[2]

After serving approximately three and one-half years in the Atlanta Penitentiary, Miller was paroled to the supervision of Mr. Robert Colville of the Probation Department of the United States District Court for this district. By his own determination, and with the help of Mr. Colville, Miller stayed out of trouble for nearly three years. But Miller is an alcoholic: he has probably never violated the law except when drunk. He was arrested for driving drunk and public drunkenness, and his parole was revoked in November 1972. He has now served some four years and two months of this eight-year sentence, and with time off for good behavior, which he has always earned, he should complete service of his sentence in approximately three and one-half years.

■ In his petition, Miller urges that 75 percent of his prior criminal record, which was presented to me as a part of the presentence report, should not have been considered because he was not represented by counsel. Commendably, the United States Attorney has verified Miller's attack on particular convictions and stipulates that he was, in fact, unrepresented by counsel and did not waive the appointment of counsel. Accordingly, there is no fact issue to be resolved, and I have determined it is unnecessary for Miller to be in attendance or to have counsel appointed. The Congress has required neither. 28 U.S.C. § 2255.

■ It is true, as conceded by the United States Attorney, that prior convictions of automobile larceny, breaking and entering, and receiving stolen property are void by reason of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and, under *Tuck-*

---

* Sitting as a district judge by designation.

1. United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

2. It may have been Dickens who first reported that pickpockets used to pick the pockets of people watching the hanging of a pickpocket. *See Generally* R. Donnelly, J. Goldstein & R. Schwartz, Criminal Law 48 (1962); H. Packer, The Limits of the Criminal Sanction 39 (1968).

*er,* should not have been considered in the sentencing process.

The United States Attorney joined in Miller's prayer that I hear this matter because he thought that no one could know quite so well as I what factors entered into the formulation of the sentence imposed. But memory fails. I cannot reconstruct what I thought about on May 12, 1966. The best I can do is rely upon habit: always in the course of ten years as a trial judge (state and federal) I took into account a defendant's prior criminal record when I sentenced him. I can only assume that I must have done so with respect to Miller.

The void sentences are not only the most serious ones, but are later in point of time, and therefore more significant factors in the determination of a proper sentence than those suffered when he was very young. Since I always took into account a man's prior record, I must assume that if his "laundered" record had been presented to me it would have been to his advantage.

Miller's sentence is now inappropriate because prior convictions of serious offenses (that now must be treated as void) contributed to the formulation of sentence and enhanced punishment. *See* Lipscomb v. Clark, 468 F.2d 1321 (5th Cir. 1972), and Brown v. United States, 483 F.2d 116 (4th Cir. 1973) (concurring and dissenting opinion). I therefore conclude that under the *Tucker* doctrine Mr. Miller is entitled to vacation of his sentence and to be resentenced.

██ What is now an appropriate sentence? All of my judicial life I have wished for precision in the art of sentencing, and it eludes me. It seems to me incongruous that trial judges, without either training or experience in penology, are accorded finality in the determination of punishment.

> What happens at this juncture depends largely on the judge's conscience or, as some have suggested, the state of his digestion. Nine out of ten defendants plead guilty without trial. For them the punishment is the only issue, and yet we repose in a single judge the sole responsibility for this vital function.

Not long ago when my colleague on this panel, Judge Walsh, was Deputy Attorney General, he strikingly pointed out the glaring inconsistency of our approach. This is what he said, "One of the greatest problems the judge has is sentencing. The defendant, too. If he makes a mistake of law, he can be reviewed by an appellate court and be straightened out. If he makes a mistake in sentencing, there's nothing much that can be done about it. He makes a mistake and it sticks."

· · · · · ·

The complexity of the problem persists whatever standards the judge avows in determining the sentence, whether it be rehabilitation, deterrence or vindication of the community sense of justice. . . . It is both unwise and unfair, it seems to me, to let a single judge handle the job alone with no authority in any quarter to check on possible aberrations, however unjust the result may be, provided only that the statutory limit has not been exceeded. The truth is that passing sentence is far too delicate a power and too consequential to be lodged in any man's hands entirely unsupervised. It jars with our traditional notions of human freedom to say that the exercise of such vast power by one man shall remain beyond review by anyone else. I see no reason why our basic concepts of checks and balances should not apply to men's destinies as well as to procedural matters, civil damages and the like. In no other role can a judge so freely impose a pattern of his personal reactions, philosophy and animosity as when he sentences a man who has no right of appeal though the effect may be his destruction. In no other area of the law are judicial prerogatives so uncontrolled or criteria so obscure—in no other country is such a situation permitted to exist.

Address by Judge Sobeloff, Symposium of the Judicial Conference of the United States Court of Appeals for the Second Circuit, September 24, 1962, 32 F.R.D 264, 265–268.

Even today one can graduate from the nation's best law schools without receiving so much as one hour of instruction in penology. It should not be surprising that this is so—for penology is not law: it is sociology. The only law is the maximum sentence. When I was a trial judge, and charged with the responsibility of sentencing, I used to make myself scan and sometimes read the quarterly entitled "Federal Probation" devoted to the science of penology. That, plus attendance at a sentencing institute and visits to three prisons comprised nearly all of my training and experience for the sentencing function. I think it not enough. I have about concluded that the trial judges I have known (including me, especially) are not as qualified by education and experience as are those from other disciplines to decide whether a man should go, nor how long he should remain in prison. *See generally,* Frankel, Criminal Sentences 12–16 (1973). Indeed, I wonder if any one man can be truly qualified for such an awesome responsibility: to do right may require a panel of persons with diverse sociological expertise. ABA Standards Relating to Sentencing Alternatives and Procedures 8, 9, 200 & 230 (Approved Draft 1968); *See* Hayner, *Sentencing by an Administrative Board,* 23 Law & Contemp. Prob. 477 (1958). It seems to me that a federal probation officer's experience and probable aptitude equip him better than most to decide what is best for Kenneth Miller and what degree of risk to society his release may entail. For longer than I have been a judge Mr. Colville has dealt with the Kenneth Millers of this world. Mr. Colville has now recommended that the remainder of Miller's sentence be suspended and that he be placed on probation.

Because the eight-year sentence imposed on May 12, 1966, was enhanced to some degree by reason of my consideration of certain prior criminal offenses which should not have been taken into account, I conclude that the sentence of May 12, 1966, was inappropriate, and Mr. Miller is entitled to be resentenced. In the exercise of sentencing discretion, Mr. Miller will be resentenced to an indeterminate sentence of seven years, pursuant to 18 U.S.C. § 4208(a)(2).[3] The computation of the seven-year resentence will, of course, run from May 12, 1966, and will be imposed *nunc pro tunc.*

The recommendation of the federal probation officer is accepted and adopted as my own, and the remainder of the seven-year sentence will be suspended and Mr. Miller will be placed on probation subject to all of the general conditions of probation and this special condition: that he cooperate and participate in the alcoholism treatment program of the Blue Ridge Community Mental Health Center. The suspension period will be for a term of two years.

It is so ordered.

3. I believe it can make no difference now to Kenneth Miller whether he is resentenced under 42 U.S.C. § 4208(a)(2) or receives a so-called "straight" sentence.

Because Miller has succeeded in the prosecution of his writ under § 2255, and because he will be accorded greater leniency than the sentence previously imposed, I am inclined to think that it would be an exercise in futility to formally convene the court and accord him, again, the right of allocution. But since the application of Rule 32(a) to resentencing is not entirely clear, I do not deny it to him. At Mr. Miller's request I will formally resentence him and accord to him the right of allocution. His failure to make such a request shall be deemed a waiver.

Mr. Miller is also hereby notified that he has a right to appeal which must be exercised within thirty days of the entry of this order. If he is unable to pay the costs of an appeal, he may apply for leave to appeal in forma pauperis.