**Harry Louis TUNKS, Petitioner,**

v.

**Maurice H. SIGLER, Chairman, United States Parole Commission, United States Bureau of Prisons, Respondents.**

No. CV76–2321–RMT.

United States District Court,
C. D. California.

Oct. 15, 1976.

Victor Sherman, Nasatir, Sherman & Hirsch, Beverly Hills, Cal., for petitioner.

William D. Keller, U.S. Atty., Los Angeles, Cal., for respondents.

OPINION

TAKASUGI, District Judge.

This is a petition for writ of habeas corpus based on allegations that procedures followed by the United States Board of Parole (now the United States Parole Commission), which resulted in revocation of Petitioner's parole, violated the due process

clause of the Fifth Amendment to the United States Constitution.

## FACTS

On May 26, 1969, Petitioner was sentenced to eight years in federal prison . . . the first six years for importing marijuana and hashish (21 U.S.C. § 176a) . . . followed consecutively with an additional two years for failing to appear as ordered (18 U.S.C. § 3150).

He was paroled on September 11, 1972, with a termination date of March 2, 1977. About May 16, 1975, he was arrested as a parole violator, following his arrest by federal officers on April 30, 1975, on charges of importing cocaine and possession of same with intent to distribute, a felony (21 U.S.C. § 841[a][1]). He was charged with and entered a plea of guilty to a misdemeanor, to wit, simple possession of cocaine (21 U.S.C. § 844), for which he was sentenced on December 8, 1975, to one year in prison to run concurrently with his incarceration for parole violation.

The Board of Parole revoked Petitioner's parole, following a hearing on November 6, 1975. The Board imposed the remainder of his sentence on the 1969 conviction—1,633 days—making his mandatory release date November 29, 1978. Petitioner appealed to the Regional Director of the Board of Parole, who modified the previous decision in that the case would be reopened and continued for hearing in January, 1978. He then appealed to the National Appellate Board, during which appeal Petitioner discovered that the decision of the original Board had been based upon the assumption, *inter alia,* that Petitioner had been convicted of a felony (possession of cocaine with intent to distribute same) rather than a misdemeanor (simple possession of cocaine). The decision by the National Appellate Board, dated August 6, 1976, affirmed the previous decisions, merely restating the reasons for the parole revocation in modified form so as to reflect the misdemeanor conviction rather than the erroneous felony conviction.

The notice of Petitioner's parole revocation from the Board of Parole notes three violations. The first two were relatively insignificant. The first was for possession of a slot machine, a misdemeanor. The second was for leaving the district without permission. Both of those violations occurred in 1974. The Board of Parole knew of those violations but made no move to revoke his parole at that time. The Board moved promptly to revoke Petitioner's parole after his felony arrest for possession of cocaine with intent to distribute same, which creates the impression that this was the principal reason for the parole revocation.

## OPINION

■ The primary question is whether the procedure followed by the National Appellate Board of merely modifying the reason for the parole revocation while upholding the decisions of the local and regional boards comports with due process of law. This court holds that mere correction of the record, without any evidence that there was a genuine reconsideration of the decision based upon that record, constitutes a denial of due process.

In *Tucker v. United States,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the United States Supreme Court affirmed a decision by the Ninth Circuit Court of Appeals that a prisoner's sentence must be reconsidered where the sentencing judge considered prior convictions later held unconstitutional. The reasoning of *Tucker,* which involved the original sentencing of the defendant by a judge, seems equally applicable to the revocation of parole by the United States Board of Parole. See *Wren v. United States,* 389 F.Supp. 938 (N.D. Georgia 1975), wherein a U.S. District Court applied the rule of *Tucker* to a U.S. Board of Parole decision. The Supreme Court in *Tucker* ruled that the petitioner need not prove that his sentence would have differed had the previous invalid convictions not been considered. He need only show that the invalid convictions were specifically considered by the sentencing court. In this case, the Board based its decision to revoke Petitioner's parole upon the errone-

ous information that he had been convicted of a felony when, in fact, the conviction was for a misdemeanor.

In a similar case, the U.S. District Court in Connecticut ruled that where a parole board decision to deny parole to a prisoner was based in part on an invalid reason, the board must "with the utmost sincerity, determine whether it still wishes to deny parole" now that it has the correct information. *Kohlman v. Norton,* 380 F.Supp. 1073 (D.Conn.1974). It would be arbitrary to grant such relief to a prisoner denied parole without also extending the rule to persons whose parole has been revoked under otherwise identical circumstances.

■ In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court held that a parolee's liberty involves significant values within the protection of the due process clause of the Fourteenth Amendment. The same standards of due process would apply in federal cases through the Fifth Amendment. Such protection should at least assure that a finding of parole violation is based upon verified facts to support the revocation. The court pointed out:

> "The parolee is not the only one who has a stake in his conditional liberty. Society has a stake in whatever may be the chance of restoring him to normal and useful life within the law. Society thus has an interest in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole, given the breach of the parole conditions. (Citation) And society has a further interest in treating the parolee with basic fairness: fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness."
> 408 U.S. at 484, 92 S.Ct. at 2602.

The court announced guidelines for parole revocations. Congress essentially incorporated those guidelines into the Parole Commission and Reorganization Act, P.L. 94–233, which was enacted on March 15, 1976, and made effective as of May 14, 1976. See 18 U.S.C. § 4201, et seq. Respondent claims that the Board of Parole had absolute discretion in determining Petitioner's parole revocation. The law in effect at the time of the original hearing on Petitioner's parole revocation (former 18 U.S.C. § 4201, et seq.) did grant the Board of Parole broad discretion. However, Congress could not grant the Board greater discretion than is consistent with Petitioner's constitutional right to due process of law. The *Morrissey* decision, announced in 1972, put some limits on the discretion of the Board of Parole. Those limits were exceeded in November, 1975, when the Board revoked Petitioner's parole on the basis of erroneous information. The "corrective" action of the National Appellate Board was a mere cosmetic, retroactive correction of the record with no evidence of a genuine reconsideration of the parole revocation decision based upon that erroneous record. This type of rubber stamp justice does not comport with due process of law.

■ The government also contends that the petition should be denied because Petitioner failed to inform the Board of its error until July 12, 1976, while the case was before the National Appellate Board. It is the burden of the Board of Parole, not of the parolee, to see that a proper hearing is conducted. See *Preston v. Piggman,* 496 F.2d 270, 274 (Sixth Cir., 1974).

The United States Parole Commission is hereby ordered to grant a new hearing to reconsider Petitioner's parole revocation. Upon rehearing, the Parole Commission must follow all currently applicable guidelines. The regulations adopted pursuant to the new parole act provide that, if the prisoner has engaged in new criminal conduct, "the guidelines for parole consideration specified in 28 C.F.R. § 2.20 for the *poor* parole risk category shall then be applied". 28 C.F.R. § 2.21(b)(2); 41 F.R. 19333. If the hearing is not held within sixty days, Petitioner shall be released from custody immediately and restored to his former parole status, said parole to terminate on his mandatory release date, November 29, 1978.

Petitioner's request to be released on bail pending the rehearing of his case by the Parole Commission is denied.