856 F.2d 196
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Omar OCAMPO-BEDOYA, Defendant-Appellant.
 No. 87-1999.
 United States Court of Appeals, Sixth Circuit.
 Aug. 12, 1988.
 
 Before KEITH, KENNEDY and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Omar Dario Ocampo-Bedoya was sentenced to twenty years in prison and a $100,000 fine after he pled guilty to possessing with intent to deliver 5.4 kilograms of cocaine. The guilty plea was made pursuant to an agreement between Ocampo and the Government under Rule 11 of the Federal Rules of Criminal Procedure. Ocampo now raises four grounds that he claims requires remanding the case for a new sentence. He also argues that one of those grounds would alternatively justify the reduction of sentence. We find no merit in any of the four stated grounds, and affirm the judgment of the District Court.
 
 
 2
 The first ground advanced is that the Government violated the Rule 11 agreement. That agreement included a promise that the "Government will take no position at the time of Sentence (Reserves right to correct factual inaccuracies in presentence report)--and the Government will not charge defendant with a violation of 21 USC 848 arising out of this case," Joint Appendix at 10.[1] At the sentencing hearing, Ocampo's counsel spoke and argued that his client should receive a light sentence because, among other reasons, he was, contrary to the position advanced in the presentence report, only a "mule" who carried the cocaine, and because he was less culpable than two other conspirators who had already been sentenced.
 
 
 3
 The Assistant United States Attorney then responded to this statement. He said the Government disagreed with the characterization of the defendant as only a mule, and that it adhered to the position expressed in the presentence report which, the Government believed, "evidences considerably more participation than a mere mule and more transactions than the one that gave rise to the arrest," Joint Appendix at 161.
 
 
 4
 The District Court then asked the Government's attorney whether he could "within the spirit, as well as the letter of the Rule 11 agreement, provide the Court with an assessment of the relative culpability of Mr. Ocampo with [the two co-conspirators]," id.
 
 
 5
 In response, the Assistant United States Attorney then reiterated the Government's position that Ocampo had been the source of the cocaine, and implicitly that he was the most culpable.
 
 
 6
 We note that the Government had explicitly reserved the right to correct factual inaccuracies in the presentence report. In a hypertechnical sense, the Government went beyond this. However its comments were directed at rebutting the defendant's attempt to correct what he viewed as factual inaccuracies in the report. Thus the government was correcting factual inaccuracies which resulted from defendant's attempt to correct the report. While "plea agreements are to be construed strictly," United States v. Brummett, 786 F.2d 720, 723 (6th Cir.1986), we do not believe that Ocampo failed to receive the benefit of the bargain he made, see Bercheny v. Johnson, 633 F.2d 473, 476 (6th Cir.1980). The Government took no position on the length of time to which Ocampo should be sentenced. We believe that, and the agreement not to charge him under section 848, were what he expected to receive in return for his guilty plea. The correction the Government did make was within the spirit of the reservation in the plea agreement.[2]
 
 
 7
 Ocampo next argues that the District Court failed to comply with the procedure required by Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure. Whenever a factual inaccuracy in the presentence report is alleged by the defendant, that provision requires the sentencing court to make a finding as to each such allegation or a determination that a finding is not necessary because the controverted matter will not be taken into account in sentencing.
 
 
 8
 Ocampo contends that the District Court failed to make such findings as to the presentence report's assessment of the degree of Ocampo's involvement in the cocaine operation. The District Court nonetheless, according to Ocampo, relied on the presentence report in assessing Ocampo's culpability. Ocampo points to two separate statements by the District Court, in the first of which the Court says that whether the presentence report is "accurate or inaccurate, supported or unsupported by the facts, [it] should remain. It is viewed as [the probation officer's] subjective analysis of the matter. The Court accepts it as such and no more," Joint Appendix at 147. In the second statement, the District Court said that "[o]n the basis of the Pre-sentence Report ... I am of the belief that the Defendant ... is not the so-called mule," he claims to be, Joint Appendix at 163.
 
 
 9
 There is no contradiction when these statement are examined in context. The first was in response to defense counsel's query as to the power of the District Court to alter the presentence report. The Court responded that the probation officer's assessment of Ocampo's culpability contained in the presentence report would remain in the record sent to other authorities (i.e., if Ocampo was sentenced to prison) despite the fact that it was contraverted by the defense. The District Court pointed out that the defendant's contrary assessment would also be part of that record.
 
 
 10
 We understand this statement to mean that the District Judge himself was not accepting the assessment of the probation officer. The District Court's second statement, which occurred after both defendant's counsel and the Government's attorney had spoken, was, in fact, the District Court's independent assessment as to culpability, based on the facts in the presentence report, facts which had not been contraverted by Ocampo. The District Court in no way violated Rule 32(c)(3)(D).
 
 
 11
 The final two grounds raised by Ocampo are that the District Court considered improper factors in imposing sentence, and abused its discretion by failing adequately to balance mitigating and aggravating factors in deciding on a sentence.
 
 
 12
 The "improper factor" contention rests on the fact that the District Court said that he had little sympathy for Ocampo, "who has provided the poison which, when distributed, has doubtlessly affected the lives of many families whose name are unknown to us today," Joint Appendix at 164. Ocampo argues that this statement indicates that the District Court held Ocampo responsible for drug transactions other than the one to which he pled guilty and for which there was no evidence.
 
 
 13
 We believe the evidence before the District Court was sufficient to justify his statement. The extent and seriousness of drug trafficking is hardly a disputed issue. We see nothing wrong with the District Court's statement.
 
 
 14
 Finally, we do not believe the District Court abused its discretion in deciding, on the basis of all the information before him, that the sentence imposed was appropriate. See United States v. Tucker, 404 U.S. 443 (1972).
 
 
 15
 The judgment of the District Court is affirmed.
 
 
 
 [1]
 21 U.S.C. Sec. 848 concerns "continuing criminal enterprises."
 
 
 [2]
 While we do not think the language of the agreement, to "take no position at the time of Sentence" can reasonably be construed to include the comments made by the Government, particularly in light of the explicit reservation of the right to correct inaccuracies, it is nonetheless true that more straightforward language in plea agreements might avoid genuine misunderstandings in the future. We therefore " 'admonish the government to avoid occasions for questioning of its meticulous adherence to the terms of a plea bargain,' " Brummett, 786 F.2d at 723, quoting United States v. Bullock, 725 F.2d 118, 119 (D.C.Cir.1984)