**UNITED STATES of America**

**v.**

**Alexander Eugenio MOSKOVITS.**

**Crim. No. 87–284–01.**

United States District Court,
E.D. Pennsylvania.

Jan. 13, 1992.

See also 784 F.Supp. 183.

Kristin R. Hayes, Asst. U.S. Atty., for U.S.

William M. Kunstler, New York City, for Moskovits.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

On September 9, 1991, I granted defendant's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Contending, for a variety of reasons, that the order vacating defendant's sentence was erroneous, the government has moved for reconsideration. For the reasons that follow, the motion will be denied.

Defendant Moskovits moved to vacate his sentence because, in formulating that sentence, I had treated as a valid prior conviction a conviction obtained in Mexico in September 1983. In granting defendant's motion, I accepted defendant's argument that the so-called "Careo," or confrontation, hearings—one on August 10, 1983, and a second on August 29, 1983—were a critical phase of the trial at which defendant had not had the assistance of counsel. I therefore concluded that the proceedings in Mexico failed to comport with the standards of fundamental fairness

necessary to treat the conviction as a valid prior conviction for the purpose of augmenting a sentence in this country.

To be sure, the Careo hearings were not Mr. Moskovits's sole opportunity to present a defense to the judge. What is important from the perspective of American standards of fundamental fairness, however, is that in Mr. Moskovits's Careo hearings the accused confronted his accusers, in the presence of the judge, without the effective assistance of counsel. Indeed, my understanding, on the basis of the testimony of the defense expert, Mr. Cruz, was that counsel not only was not permitted to participate actively in the Careo hearing, but was not permitted to be present.

The government, in its motion, argues that my decision was predicated on a mistaken understanding of Mexican legal process. It characterizes the Careo hearing as follows:

> The purpose of the *Careo* hearing is to allow the defendant to confront his accusers face-to-face and to allow the judge to have a personal impression of the reactions of both sides. Because of the latter purpose, a lawyer may be present, but cannot talk or interfere. In fact, the defendant may have been represented by a lawyer in his *Careo* hearings and one would not know that from the written record because the lawyer, unlike in other stages, does not sign the record. The defendant is free to say whatever he wishes during the hearing, or to remain silent. The *Careo* hearing may occur at any time during the proceedings. The *Careo* hearing is not determinative of guilt. Once the *Careo* hearing has occurred, the defendant's lawyer may present any evidence which he wishes to prove anything. In other words, the events at the *Careo* hearing do not limit what a defense lawyer may do in the course of his representation. It is highly unusual that a defendant would not present additional evidence following a *Careo* hearing.

Government's Motion for Reconsideration at 2. The government seeks an evidentiary hearing at which it proposes to provide evidence substantiating its interpretation of the role of the Careo hearing in Mexican criminal process. The government also requests an opportunity to interview Gilberto Rojo Herrera—the Mexican attorney retained by defendant's father on August 22, 1983 to represent defendant in the Mexican proceedings—in order to find out whether Mr. Herrera in fact attended either of the Careo hearings and why he offered no evidence on Mr. Moskovits's behalf when such an opportunity was accorded by court order of September 6, 1983.

Defendant contends that, in the course of these protracted proceedings, the government has already had ample opportunities to make evidentiary presentations countering the defense submissions with respect to the Careo hearings. Having elected not to build a record of its own, and having lost, the government should not—so the defense contends—be accorded a fresh opportunity to bolster its position.

The government's explanation of its piecemeal approach to this matter is as follows:

> The government made the judgment in its earlier submissions that the defendant had not sustained his burden and therefore, did not undertake the investigation it has now undertaken. Perhaps that judgment was erroneous, but the question of what occurs in a 1983 Mexican criminal prosecution is not one of easy resolution.

Government's Response to Defendant's Response to Government's Reconsideration Motion at 3. The recital is not a very compelling one. In terms of the conventions that customarily, and sensibly, govern the litigation process, both parties have had a fair chance to build a record on which a decision could be made. Considerations of finality weigh strongly against reopening a record simply because one litigant, having failed to persuade the court on the record made, belatedly decides that it can strengthen its case on the issues decided against it.

█ Thus, it would not be an inappropriate exercise of my discretion to deny the government's motion for reconsideration on

the ground that the government is too late. I am not persuaded, however, that with respect to the particular question at issue—namely, whether Mr. Moskovits should be resentenced—I should decline to entertain the government's motion for reconsideration simply because the government could have come forward with its present contentions at an earlier date. Mr. Moskovits has no compelling stake in having the question decided today rather than a month or so hence. Even if Mr. Moskovits is to be resentenced, there can be little doubt that he will have to remain in prison for a very extended period of time.[1] In short, extending these proceedings to reopen the record might well be vexatious to Mr. Moskovits, but it would not trample any identifiable legal interest, whether of a reliance nature or otherwise. Accordingly, I will consider the government's motion for reconsideration on its merits.

■ On its merits, the motion does not persuade. That is to say, if I assume, *arguendo*, that the government would, at a further evidentiary hearing, succeed in establishing the proffered facts, I am nonetheless unconvinced that a different result is called for. To make clear why this is so, I will address the government's contentions *seriatim*.

First, the government argues that I erred in concluding that counsel is not allowed to be present at a Careo hearing. The government contends that because counsel is allowed to be present at a Careo hearing, and because Mr. Moskovits may therefore in fact have been accompanied by counsel at the Careo phase, Mr. Moskovits was not deprived of any right to representation. But the contention fails to come to grips with the due process problem. The difference between a hearing from which defendant's lawyer is barred and a hearing at which defendant's lawyer is allowed to be present but may not participate is not of much significance from the perspective of fundamental fairness. An attorney who is forced to remain silent cannot render effective assistance.

Second, the government contends that Mr. Moskovits's Careo hearings were not a critical phase of the proceeding, because Mr. Moskovits had other opportunities to present evidence with the assistance of counsel. It was my understanding when I gave my bench opinion that the Careo hearings were not Mr. Moskovits's sole opportunity to present evidence. The mere fact that Mr. Moskovits had other means to present evidence to the judge does not, however, render the Careo hearings a noncritical phase of the proceeding. The Careo hearings were the confrontation phase, and Mr. Moskovits—whether he was alone, or was accompanied by a lawyer who was bound to remain silent[2]—was not, from the perspective of fundamental fairness, equipped to challenge the testimony of his accusers.

Third, the government argues that, even if the Careo hearings constituted a critical phase of the proceeding at which Mr. Moskovits was denied effective assistance of counsel, the denial of counsel did not pervade the entire proceeding and therefore should be analyzed using a harmless error standard. *See Satterwhite v. Texas,* 486 U.S. 249, 256, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988) (a Sixth Amendment violation that pervades the entire proceeding can never be considered harmless error; lesser constitutional violations are analyzed by the harmless error rule). This contention fails on two grounds. First, because Mr. Moskovits presented no evidence outside the Careo phase, it is plain that, in his case at least, the lack of effective assist-

---

1. Indeed, there is no assurance that resentencing would result in a sentence shorter than the one pursuant to which Mr. Moskovits is now incarcerated.

2. If the government's speculation that Mr. Herrera may in fact have been present at the Careo phase is accorded its fullest weight, that would mean that an attorney accompanied Mr. Moskovits, and sat mute, at one of the two Careo hearings—that conducted on August 29, 1983, one week after Mr. Herrera was retained. The first Careo hearing—a considerably more extended proceeding than the second—took place on August 10, two days after the withdrawal of Mariano Felipe de Jesus Herrera, the first attorney to appear on Mr. Moskovits's behalf, and twelve days before Gilberto Rojo Herrera was retained.

ance of counsel at the Careo phase did, in a real sense, pervade the entire proceeding. But second, even if the harmless error standard is applied, the government has not offered—and, indeed, cannot offer—a basis for a finding that the error was harmless beyond a reasonable doubt. Through the Careo phase, the judge, who was ultimately to determine Mr. Moskovits's guilt or innocence, was permitted to form an impression of the credibility of Mr. Moskovits, of his accusers, and of an inculpatory statement said by Mr. Moskovits to be a product of duress, in hearings in which counsel could not participate in any meaningful way. From Mr. Moskovits's perspective, the deprivation of counsel at the Careo hearings left him alone to confront his accusers before the ultimate finder of fact. Such a deprivation cannot possibly be shown to be harmless beyond a reasonable doubt.

> Finally, the government argues that even if the *Careo* hearing is a proceeding which in the American legal system would be viewed as a crucial phase of the proceeding at which a defendant was entitled to counsel, it is error for this Court to superimpose the requirements of the American legal system on the Mexican legal system.

Government's Motion for Reconsideration at 4. Here, the government may have misapprehended what I endeavored to say in my bench opinion. In that opinion, I undertook to draw a distinction between procedural elements that are simply accepted aspects of the mechanisms that conventionally characterize the American criminal process and procedural elements that are essential to fundamental fairness:

> How does one draw distinctions? In the *Wilson* case [*United States v. Wilson*, 556 F.2d 1177 (4th Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 481 (1977)], the Court of Appeals noted that a German criminal conviction could be relied upon by an American court, notwithstanding the absence of a jury in German criminal procedure. A jury is part of the American constitutional armament. It is guaranteed in federal prosecutions by the Bill of Rights, and has

been judicially found, via the Fourteenth Amendment, to be an ingredient of the due process which states are required to observe in state criminal proceedings.

> It would, however, be a form of cultural imperialism for the United States to insist that it would not countenance, for U.S. purposes, recognition of a foreign criminal judgment which came from a legal culture which did not employ the jury.... In contradistinction to the jury ingredient, I would find the presence or absence of counsel.

The Supreme Court of the United States found that counsel are required in state criminal proceedings by virtue of the Constitution of the United States, long before the Supreme Court found that juries were required in state criminal proceedings by the Constitution of the United States.

The distinction is not merely a chronological one in the development of the American jurisprudence. The distinction has to do with the basis on which the right to counsel cases lie. The distinction is that without an attorney at one's side, most laypersons are essentially helpless to meet criminal charges.

So that what is in form a hearing, is in fact not a hearing when an accused does not have a lawyer. That observation about how the criminal process works is an observation that would not have geographical boundaries, if the Supreme Court were right in its perception about the criminal process in the United States. The determination is one that ... would apply equally well to Mexico or to the United Kingdom or to South Africa or to the Soviet Union or to Zimbabwe.

> Accordingly, I think we cannot countenance reliance on a foreign criminal conviction where it can be said, on the basis of the record made, that there was a failure to provide for counsel at crucial stages of the process.

*United States v. Moskovits*, 784 F.Supp. 183, 190 (E.D.Pa.1991). Because the government's characterization of the Careo hearing does not, in my judgment, provide a basis for concluding that the Careo hear-

ing is not, in fact, a critical phase of the Mexican criminal process, I am not persuaded that my prior decision was erroneous.

In *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the Supreme Court determined that the defendant was entitled to a new sentence when the trial judge, in setting the original sentence, had taken into account prior convictions, unaware that those prior convictions were obtained in the absence of counsel. In the context of consideration of a foreign conviction, *Tucker* has been interpreted to require resentencing where (1) a prior conviction failed to meet the standards of fundamental fairness, (2) the sentencing judge mistakenly believed that the prior conviction was valid, and (3) the sentencing judge enhanced the sentence based on the prior conviction. *See United States v. Fleishman*, 684 F.2d 1329, 1346 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). Applying this standard in the bench opinion ruling on Mr. Moskovits's section 2255 petition, I concluded that Mr. Moskovits's original sentence should be vacated, and a new sentence imposed, because in formulating the original sentence I took into account Mr. Moskovits's prior Mexican conviction, unaware of the infirmities of that conviction. The government's motion for reconsideration does not persuade me that the bench opin-

ion was in error. Accordingly, the motion is denied.

An appropriate order follows.[3]

### ORDER

Upon consideration of the government's motion to reconsider my order of September 9, 1991, and defendant's opposition thereto, for the reasons given in the accompanying memorandum, it is hereby ORDERED and DIRECTED that the government's motion is DENIED.

---

**3.** Preparing this opinion has required me to go through the unedifying process of reading the two defense submissions—docket number 189, filed October 17, 1991, and docket number 191, filed October 31, 1991—in opposition to the government's motion for reconsideration. I say "unedifying" because in each of these submissions defense counsel William M. Kunstler, Esq., has elected to calumniate opposing counsel, Assistant United States Attorney Kristin R. Hayes, in abusive terms—*e.g.,* "vindictive," "personal animus toward the defendant"—calculated to impugn Ms. Hayes's professional integrity. Moreover, Mr. Kunstler has sought to document these calumnies by attributing to Ms. Hayes a statement (which she denies) allegedly made in conversation between counsel not on the record and to which the court was not a party.

I have been acquainted with Ms. Hayes for a number of years. I have watched her develop from a capable law student into a capable federal prosecutor. In the litigated matters in which I have observed her, Ms. Hayes has uniformly conducted herself as a vigorous but fair litigator who is mindful that the United States wins not when a criminal defendant is sent to prison but when justice is done.

I have also been acquainted with Mr. Kunstler for many years—many more years than I have been acquainted with Ms. Hayes. Knowing Mr. Kunstler's remarkable energy, commitment, and experience, I welcomed his appearance, *pro hac vice,* in this most recent chapter of Mr. Moskovits's protracted proceedings. But if Mr. Kunstler persists in abusing his adversary, or in otherwise failing to conform to the standards of professional conduct expected of an officer of this court, the welcome will evaporate.