UNITED STATES of America,
Appellee,

v.

**Jose Rafael Rios CRUZ, Miguel Castro, Alejandro Figueroa, Defendants,**

**Luis Armando Pena Soltren,
Defendant–Appellant.**

No. 11–256–cr.

United States Court of Appeals,
Second Circuit.

May 31, 2012.

James E. Neuman, New York, NY, for Appellant.

Ryan P. Poscablo, Justin S. Weddle, Assistant United States Attorneys, for Preet Bharara, United States Attorney for the Southern District of New York, for Appellee.

PRESENT: AMALYA L. KEARSE, SUSAN L. CARNEY, and J. CLIFFORD WALLACE,* Circuit Judges.

* The Honorable J. Clifford Wallace, of the United States Court of Appeals for the Ninth Cir-

## SUMMARY ORDER

Luis Armando Peña Soltren appeals from a judgment of conviction entered on January 14, 2011, following his guilty plea to conspiracy to commit air piracy and kidnapping in violation of 18 U.S.C. § 371 (1964), 49 U.S.C. § 1472(i) (1964), and 18 U.S.C. § 1201 (1964); interfering with flight crew members in violation of 49 U.S.C. § 1472(j) (1964); and kidnapping in violation of 18 U.S.C. § 1201 (1964). We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision.

On November 24, 1968, Peña Soltren—then age 25—was one of three men who hijacked Pan American Airways Flight 281, which was scheduled to fly from John F. Kennedy International Airport in New York to Puerto Rico. Using guns and knives to gain control of the plane, they forced the pilots to land in Havana, Cuba.

Peña Soltren remained in Cuba for more than forty years. In October 2009, he returned to the United States, where he was arrested and prosecuted for the 1968 sky-jacking. Pursuant to a plea bargain, Peña Soltren pled guilty to the offenses detailed above, and was sentenced to fifteen years' imprisonment "without parole." Sentencing Tr. at 32. On appeal, Peña Soltren argues principally that the district court erred by imposing a sentence that sought to eliminate the possibility of parole and by imposing an otherwise unreasonable sentence.

The crux of Peña Soltren's argument is that because the sentencing regime in place at the time of his crime included the possibility of parole, the district court was required to impose a sen-

cuit, sitting by designation.

tence that did not eliminate parole eligibility. *See United States v. Story*, 891 F.2d 988, 991 (2d Cir.1989) (Sentencing Guidelines apply only to offenses committed after November 1, 1987). On appeal, the government concedes that such a sentence was required.[1] As the government acknowledges, in 1968, "[t]hree statutory alternatives as to ... eligibility for parole were open to the sentencing court." *Grasso v. Norton*, 520 F.2d 27, 28 (2d Cir.1975). First, the district court could have sentenced Peña Soltren under the general parole statute, 18 U.S.C. § 4202 (1964), pursuant to which an offender would be eligible to be "released on parole only after serving one-third" of his term of imprisonment. *Grasso*, 520 F.2d at 28. Second, the district court could have set a modified date of parole eligibility under 18 U.S.C. § 4208(a)(1) (1964), which permitted the district court to "designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than, but shall not be more than one-third of the maximum sentence imposed by the court." Third, pursuant to 18 U.S.C. § 4208(a)(2) (1964), the district court could have fixed the maximum term of imprisonment to be served and allowed the prisoner to become eligible for parole "at such time as the board of parole may determine." *See also Grasso*, 520 F.2d at 28–29. The parties point to no authority, and we have identified none, permitting the district court to impose a sentence *without* the possibility of parole under the sentencing regime in effect at the time of the offense.

The district court thus erred in imposing a sentence that excluded the possibility of parole. Accordingly, we vacate Peña Soltren's sentence and remand for resentencing. On remand, the district court should sentence Peña Soltren *de novo*, applying the regime for parole eligibility outlined above and taking his parole eligibility into account as it determines an appropriate sentence.

Because we vacate Peña Soltren's sentence and remand for *de novo* resentencing, we do not need to address Peña Soltren's arguments that the district court's original sentence was otherwise unreasonable except to the extent that they are relevant to his request that the case be reassigned to a different district court judge on remand.[2] In determining whether to reassign a case on remand, we consider "(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *United States v. DeMott*, 513 F.3d 55, 59 (2d Cir.2008) (alterations and ellipsis omitted).

■ We see no persuasive reason to reassign this case on remand. Contrary to Peña Soltren's assertion, Judge Hellerstein did not rely on any inappropriate factors in imposing sentence. On the contrary, the record shows that Judge Hellerstein fully considered Peña Soltren's mitigating arguments in determining his sentence and made no error casting a shadow on the court's impartiality. Al-

---

1. Neither party appears to have brought this issue to the attention of the district court after sentence was imposed, thus the district court seems to have had no opportunity to address the argument now made on appeal.

2. We also do not need to address the appropriate standard of review to apply to Peña Soltren's challenge to the reasonableness of his sentence imposed under the sentencing regime in place in 1968.

though Peña Soltren cites as error the district court's failure to view a videotape prepared by his family in support of his sentencing memorandum, the district court was under no obligation to view the tape in addition to reviewing the copious documentary evidence that Peña Soltren had submitted. Peña Soltren's counsel was invited to describe the video to the district court and stated that the contents of the video "were similar along the lines of the letters" submitted by the family. Sentencing Tr. at 3, 15. Peña Soltren has not identified in the record any evidence of partiality on the part of the district court nor has he given us any persuasive reason to reassign the case to preserve the appearance of justice. *See DeMott,* 513 F.3d at 59.

Peña Soltren has also failed to identify any errors made in the original sentence that Judge Hellerstein would "have substantial difficulty in putting out of his ... mind" on remand. *See id.* We note that it was not error for the district court to consider the Sentencing Guidelines as one factor in imposing sentence, even though the criminal conduct occurred prior to the implementation of the Guidelines. *See United States v. Furman,* 31 F.3d 1034, 1039 (10th Cir.1994). "The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States,* 551 U.S. 338, 349, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). Sentencing Courts in pre-Guidelines cases have broad discretion to consider any relevant factors. *See, e.g., McClain v. United States,* 676 F.2d 915, 918 (2d Cir.1982) ("In deciding what sentence to impose, 'a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.' "

(quoting *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972))). Accordingly, the judge may consider the Guidelines in resentencing Peña Soltren. Finally, remanding the case to Judge Hellerstein, who is familiar with its unusual factual record, including the crime and events occurring in Peña Soltren's life over the following forty years, will preserve judicial resources.

For the foregoing reasons, Peña Soltren's sentence is **VACATED** and the case is **REMANDED** to the district court for resentencing.