**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Herbert L. FOUTZ,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ralph F. ESPOSITO, Jr., a/k/a Rapid,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Frank ARMENTANI,
Defendant–Appellant.**

**Nos. 88–5044 to 88–5046.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 31, 1988.

Decided Jan. 17, 1989.

Robert John Haddad, Virginia Beach, Va., Edward Mark Chikofsky, New York City, Michael Francis Fasanaro, Jr. (Abrons & Fasanaro, Norfolk, Va., on brief), for defendants-appellants.

Robert Joseph Seidel, Jr., Asst. U.S. Atty., Norfolk, Va. (Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before PHILLIPS and WILKINSON, Circuit Judges, and KNAPP, Senior United States District Judge for the Southern District of West Virginia, sitting by designation.

PHILLIPS, Circuit Judge:

Herbert L. Foutz, Ralph Esposito and Frank Armentani appeal from judgments entered on guilty pleas to drug and weapons charges. Finding no merit in their claims that the lower court committed various errors in imposing sentence, we affirm.

## I

In August of 1987, a federal grand jury returned a 153–count indictment against Foutz, Esposito, Armentani and thirteen other persons associated with the Renegades Motorcycle Club. The indictment charged the defendants with a number of conspiracy, drug and weapons offenses. Each of the appellants pled guilty to reduced charges in exchange for their agreement to cooperate in an ongoing investigation of the Renegades and its members' activities. As indicated, each now challenges the validity of the sentence imposed upon him.

## A

Foutz argues that the district court erred by considering his "marital status" when it imposed sentence. The transcript of Foutz's sentencing hearing reveals that the sentencing judge indeed believed that the defendant's marital experiences and out-of-wedlock living arrangements militated

against leniency. As the judge plainly indicated, he considered that Foutz's two divorces and his having lived with two women for a number of years out-of-wedlock suggested a lack of the "stability that ... would make him a good candidate for probation." Joint Appendix at 176. Foutz argues that the district court violated his due process rights by placing "undue emphasis" on his "non-marriage."

Foutz also claims that the district court failed to give adequate weight to certain "mitigating circumstances" which he argues should have led the court to grant probation or, at minimum, a shorter sentence. He points to the sentences of a number of his co-defendants in the Renegades case, and argues that he was treated (at least proportionately) more "harshly." Foutz presented seven character witnesses at his sentencing hearing, all of whom testified to the effect that Foutz had "turned his life around." Counsel for the government characterized Foutz as fully cooperative in the Renegades investigation. The presentence report prepared prior to the sentencing hearing suggested that Foutz had indeed stabilized his personal life and cooperated fully with federal agents.

The report also noted, however, that Foutz previously was involved in the sale and distribution of substantial amounts of methamphetamine and at least one pound of cocaine. The district court, summarizing its reasons for denying probation and imposing a prison term, emphasized Foutz's history of drug-related activity and noted that he had earlier been involved in a bombing attack against members of a rival motorcycle gang. The court concluded that "the sentence I've given him is a minimum sentence for the amount of harm he's done to society, and I think that's the minimum that he ought to serve." *Id.* at 177.

### B

Defendant Esposito pled guilty to two counts of aiding and abetting the possession, with intent to distribute, of one pound of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The maximum penalty on each count is fifteen years imprisonment and a $250,000 fine. The district court sentenced Esposito to fourteen years in prison and ordered him to pay a total of $20,000 in fines.

Esposito claims that the government failed to satisfy certain of its obligations under a plea agreement executed some months before sentencing. The written agreement executed by Esposito and representatives of the United States Attorney's Office provided that the government would not make any sentencing recommendation to the district court. The agreement also required, however, that during Esposito's sentencing hearing government counsel "advise the court of the nature and extent of the defendant's cooperation in this case." Joint Appendix at 33. Esposito now argues that the government could not give the court a fair assessment of the true extent of his "cooperation," inasmuch as it failed adequately to pursue his assistance in the Renegades investigation.

The hearing transcript reveals that the district court extensively explored the nature of Esposito's cooperation and the extent of the authorities' efforts to secure Esposito's assistance. Government agents apparently contacted Esposito on a few occasions prior to the sentencing hearing, but limited their conversations with him to short, general discussions of the Renegades' drug-related activities. Special Agent William D. Pickering of the Drug Enforcement Agency testified that, in two separate telephone interviews, Esposito told inconsistent stories about his involvement in a methamphetamine distribution scheme, the quantities of narcotics involved in the operation, and the identity of Esposito's individual "sources." Esposito then testified and claimed that he had never been asked about his sources. He extensively recounted his involvement in the distribution network and identified a Mr. Richard Haggeen as his primary supplier. Esposito also characterized his general role in the scheme as that of a "middleman," rather than a "major distributor." When recalled to the stand, Agent Pickering testified that he had heard of Mr. Haggeen for

the first time on the morning of the sentencing hearing.

The district court later characterized Esposito's testimony with respect to his involvement in the Renegades' drug operations as "equivocal," "evasive" and "not truthful." Esposito primarily takes issue, however, with the government's characterization of Esposito's cooperation in the investigation as a whole. Counsel for the government summarized the prosecution's position as follows:

> The one problem the government does have is that we cannot say his cooperation has been 100 percent and go to bat for him by representing to the Court it's been outstanding and exemplary and greatly aided the investigation. We've had a little problem, frankly, getting straight answers, and I think the Court observed some of that when I questioned him.... [W]e seem to go back and forth, and that, frankly, makes it difficult in trying to pin down exactly what his involvement is and his role in arranging these methamphetamine transactions, and that is where we have the problem.

*Id.* at 74. Esposito argues that this characterization was prejudicially improper under the plea agreement, inasmuch as he was never given an *opportunity* to cooperate. He argues, therefore, that he was not given the full benefit of his plea agreement, and urges us to remand for resentencing.

### C

Defendant Armentani pled guilty to one count of conspiracy and attempting to distribute narcotics, in violation of 21 U.S.C. § 846, and one count of distribution of and possession with intent to distribute narcotics, in violation of 21 U.S.C. § 841(a)(1). The maximum possible sentence on each charge is fifteen years imprisonment and a $250,000 fine. The district court sentenced Armentani to eighteen years in prison and ordered him to pay a total of $50,000 in fines.

At his sentencing hearing, Armentani objected to the presentence report's characterization of him as a "major supplier" of narcotics for the Renegades. The report categorized the sixteen defendants in the Renegades case into three groups reflecting their relative "culpability." The report characterized Armentani among those who were the "most culpable." Armentani claimed, however, that he was no more culpable than one Michael L. Rand, who was included in the report's "middle" category of relative culpability.

Rand and Agent Pickering testified at the sentencing hearing with respect to the disputed "relative culpability" question. Through their testimony, Armentani attempted to establish that he was no more than a "middleman" for the supply of narcotics to the Renegades, while Rand was a major "direct" supplier. The court found, however, on the basis of the presentence report and the testimony, that "Mr. Armentani did occupy a position superior to Mr. Rand." *Id.* at 43. Armentani's position on appeal is essentially that the court erred in finding him "more culpable" than Rand, and that Armentani therefore should have received a lighter sentence than Rand, who was sentenced to six years imprisonment.

### II

### A

■■■ As for defendant Foutz, we are not persuaded that the district court erred by considering his marital status as a factor in its decision not to grant probation. The code provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. "[A] judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). *See also United States v. Howard–Arias,* 679 F.2d 363, 367 (4th Cir.1982). A sentencing court may not, of course, consider information which is simply inaccu-

rate, *United States v. Lee,* 540 F.2d 1205, 1210–11 (4th Cir.1976), or which improperly implicates a defendant's constitutional rights. *Tucker,* 404 U.S. at 447–49, 92 S.Ct. at 591–93 (sentencing court improperly considered defendant's criminal record, which listed two prior convictions that proved to be constitutionally invalid because defendant was improperly denied assistance of counsel). In the absence of such constitutional concerns, however, a sentence which falls within the statutory limits is not subject to review on the basis urged here. *Id.* at 447, 92 S.Ct. at 591.

It suffices to say that the district court's consideration of Foutz's past living arrangements simply does not rise to the level of a constitutional violation. We may not, therefore, review the sentence by second-guessing the court's conclusion that Foutz was not a "good candidate for probation." The same can be said for Foutz's claims that the court failed to give adequate consideration to the evidence of "mitigating circumstances" presented on his behalf, and that his sentence was unduly harsh vis-a-vis the sentences imposed on his co-defendants.

> Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.... In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.

*Solem v. Helm,* 463 U.S. 277, 290 n. 16, 103 S.Ct. 3001, 3009 n. 16, 77 L.Ed.2d 637 (1983). *See also United States v. Rhodes,* 779 F.2d 1019, 1028–29 (4th Cir.1985) (appellate court consideration of "proportionality" and general appropriateness of sentence, including analysis of "sentences imposed on other criminals in the same jurisdiction," not required where sentence is less than life imprisonment without possibility of parole) (discussing *Solem* and *United States v. Darby,* 744 F.2d 1508 (11th Cir.1984)). A sentencing court simply "is not obliged to consider the sentences of

codefendants." *United States v. Lauga,* 762 F.2d 1288, 1291 (5th Cir.1985). *See also United States v. Hayes,* 589 F.2d 811, 827 (5th Cir.1979) (appellant "cannot rely upon the sentences which other defendants receive as any yardstick for his sentence"). Here, it simply cannot be said that the district court abused its "high order of discretion to fit the sentence to the crime and to the defendant." *Stevens v. Warden,* 382 F.2d 429, 433 (4th Cir.1967). We conclude, therefore, that the district court committed no reversible error in sentencing defendant Foutz.

### B

Defendant Esposito's claim that he was not given the full benefit of his plea agreement also lacks merit. Esposito correctly points out that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). The essence of Esposito's theory on appeal is that the prosecution did not fulfill its "obligation" vigorously to pursue his cooperation in the ongoing investigation of the Renegades case. He misconstrues, however, the nature of the government's undertakings in connection with the plea agreement. The relevant provision of the agreement did not require the government *affirmatively* to seek out Esposito's assistance in the case. Instead, it provided only that the government would, at the time of sentencing, "advise the court of the nature and extent of [Esposito's] cooperation." Joint Appendix at 33.

We agree that, when Esposito was sentenced, counsel for the government may have breached his implied obligation under the agreement to portray Esposito's role in the Renegades investigation fairly and accurately. If the government indeed failed vigorously to pursue Esposito's cooperation, it should not have taken the misleading position that it had "a little problem ... getting straight answers." *Id.* at 74. As the district court itself put it, "some of [the

problem with Esposito's cooperation] might be because the [government] didn't strike while the iron was hot.... I mean, if he's able to say, 'Well, nobody asked me about it before today,' it's kind of hard to hold that against him, isn't it?" *Id.* Yet it is precisely because the district court recognized that the government was at least partly responsible for Esposito's asserted "lack of cooperation" that Esposito cannot now claim that he was prejudiced by the purported failure of the government to comply with its obligations under the plea agreement. The district court heard extensive testimony at Esposito's sentencing hearing, with a view towards ascertaining the true nature and extent of Esposito's cooperation in the Renegades investigation *and* for the purpose of giving Esposito what amounted to a "last chance to cooperate." The court clearly discounted the government's claim that Esposito had been less than "outstanding and exemplary" in his willingness to "aid[ ] the investigation" *before* the sentencing hearing itself. "I blame the authorities for that, to a great extent, for not personally visiting you and sitting down and having a lengthy discussion about it." *Id.* at 77. As for Esposito's "cooperation" and the credibility of his testimony at the sentencing hearing *itself,* however, the district court specifically found that Esposito had been "equivocating" and untruthful.

We are not in a position, nor have we been asked, to question the district court's findings in this regard. More importantly, Esposito simply cannot point to the government's characterization of his presentencing "cooperation" as grounds for reversal when it is clear from the record that the district court discounted the prosecution's claim that such cooperation had been difficult to obtain. We therefore find no reversible error in the district court's sentencing of defendant Esposito.

### C

 Armentani's claim is that the presentence report, on which the district court indisputably relied, erroneously characterized him as "more culpable" than one of his

codefendants who received a lighter sentence. Thus, he argues that the lower court improperly imposed sentence on the basis of information which was simply inaccurate. *Cf. Lee,* 540 F.2d at 1210–11.

The district court heard extensive testimony on Armentani's "relative culpability" challenge and specifically found that "Mr. Armentani did occupy a position superior to Mr. Rand." Joint Appendix at 122. We review this finding of fact only for the purpose of determining whether it was clearly erroneous, *Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985), and find nothing in the record here which would lead us to believe that the district court plainly misconstrued the relevant facts. We also note that Armentani's "relative culpability" claim runs afoul of the principle, discussed above, that district courts are not obliged to make comparisons of the relative harshness of sentences imposed against various defendants. *See, e.g., Rhodes,* 779 F.2d at 1028–29. The principle is all the more relevant where, as here, a district court has been urged to compare the sentences of co-defendants who have been charged with and pled guilty to *different* offenses. We conclude, therefore, that the district court committed no reversible error in sentencing defendant Armentani.

### III

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.