**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 97-4281

CHUNGA HAKI MATATA, a/k/a K-9,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Shelby.
Lacy H. Thornburg, District Judge.
(CR-94-44)

Submitted: April 30, 1998

Decided: May 27, 1998

Before MURNAGHAN, NIEMEYER, and MOTZ,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Roy H. Patton, Jr., KILLIAN, KERSTEN & PATTON, P.A.,
Waynesville, North Carolina, for Appellant. Mark T. Calloway,
United States Attorney, Jerry W. Miller, Assistant United States
Attorney, Asheville, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Chunga Haki Matata appeals his conviction and sentence for five counts of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (1994), and one count of being a felon in possession of a firearm in violation of 18 U.S.C.§ 922(g)(1) (1994). The district court sentenced Matata to a term of imprisonment of 360 months and five years of supervised release. Finding no error, we affirm.

Matata was charged as part of complicated conspiracy to distribute cocaine and cocaine base in the Rutherford County, North Carolina, area in the early 1990's. Several government agencies investigated the conspiracy. In 1993, Matata moved into the Rutherford County area and began selling rocks of cocaine. Several Government witnesses testified that Matata sold cocaine base to them, saw Matata in possession of cocaine base, or saw him cooking cocaine base. As part of the investigation, law enforcement agents recruited Christopher Scott Gossett, who had been arrested for possession of drugs, to participate in the investigation. Gossett made numerous controlled buys of cocaine base for the agents. On one occasion, Matata sold Gossett a .25 caliber handgun. Matata does not dispute that, at the time of the sale, he was a convicted felon.

At trial, Gossett testified that on two occasions his cousin, Jan Patrick Lynch, went with him to buy the cocaine base from Matata. Lynch was unavailable to testify at trial. However, Gossett testified that prior to the buy, agents searched Lynch in his presence, that Lynch did not leave his presence throughout the transaction, and that after the purchase of drugs, he turned the drugs over to Agent Petty. Agent Petty testified that both Gossett and Lynch turned over the drugs to him after the controlled buy.

2

At the beginning of the trial, Matata's counsel objected to the composition of the jury. Matata is African-American. The panel consisted of one African-American member. Defense counsel objected and stated that it was a per se violation to have only one African-American panel member; in the alternative, he asked that the court challenge the array of jurors, or that he be allowed to investigate the method of jury selection. The court denied the motion.

During trial, defense counsel informed the court that the Defendant insisted that his counsel examine the testifying officers about a September 1993 arrest in South Carolina and a subsequent arrest and search in Rutherford County, North Carolina. The Government objected. The court required counsel to make a proffer of what evidence he expected to elicit. Counsel stated that whether the arrest and search were legal would go to the officers' credibility. The court denied the line of questioning.

The jury returned a verdict convicting Matata of all but count one of the indictment, the conspiracy charge. The jury could not reach a verdict on count one and the court declared a mistrial on that count. The Government dismissed count one. Matata filed a motion after discharge of the jury for acquittal on the remaining counts. The court denied the motion.

Prior to sentencing, the probation office prepared a Presentence Investigation Report (PSR), and Matata noted his objection to it. The court held a sentencing hearing and considered Matata's objections. The court attributed 284.79 grams of cocaine base to Matata, based upon the testimony of several witnesses. The court then increased the base offense level by two points for possession of a firearm. The court also found that Matata was a career offender and established a criminal history category of VI. The court sentenced Matata to 360 months' imprisonment for three of the possession with intent to distribute counts and 240 months for the remaining possession with intent to distribute charges, all terms to run concurrently.

First, Matata argues that the district court erred by refusing to allow a challenge to the composition of the jury panel. By statute, a defendant may challenge the method by which jurors are selected, and, if successful in showing that cognizable groups have been excluded, the

3

defendant is entitled to a new trial. See 28 U.S.C. § 1867 (1994). Under 28 U.S.C. § 1867(d), a defendant challenging the method by which juries are selected is required to file with his motion a "sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title." Failure to file such a sworn statement requires that the motion be denied. See United States v. Aguirre, 108 F.3d 1284, 1287 (10th Cir. 1997), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3292 (U.S. Oct 20, 1997) (No. 96-1982). Matata has not filed the statutorily required sworn allegation that some identified discriminatory mechanism was employed in the district plan.

Matata argues that he could not comply with § 1867(d) because he did not learn of the composition of the jury until the day voir dire began. This type of hindrance is accounted for in the statute, however, because the motion may be made within seven days after the defendant discovered the grounds for the substantial failure to comply with the jury selection provisions. See 18 U.S.C.§ 1867(a). Even in his brief on appeal, Matata does not put forth any evidence supporting his claim of a violation of the jury selection procedures. In addition, this court has approved the jury selection plan of the Western District of North Carolina. See In Matter of the Review of the Amendment to the Jury Selection Plan Submitted by the United States District Court for the Western District of North Carolina, Order No. 85 (Order of Chief Judge Ervin of the Fourth Circuit Court of Appeals, Mar. 23, 1992). We therefore find this claim to be without merit.

Second, Matata argues that the district court erred in denying his motion for judgment of acquittal. In his brief, Matata limits his argument to challenging counts 24 and 25 of the indictment, the charges involving the cocaine base buys of Gossett and Lynch together. Matata argues that it would be unreasonable to assume that Gossett would be able to know what Lynch did with any drugs he took into his possession, and therefore the quantity of drugs purchased by Lynch and given to Agent Petty should not have been admitted. Because Lynch did not testify, Gossett's and Petty's testimony was the only evidence presented on counts 24 and 25.

The appellate court reviews the sufficiency of the evidence in the light most favorable to the government. See Jackson v. Virginia, 443

4

U.S. 307, 319 (1979). At trial, Gossett testified that on two occasions Lynch went with him to purchase cocaine base from Matata, that both he and Lynch were searched prior to the buy, that Lynch was in his presence at all times, that he observed transactions with Matata and Lynch, and that Lynch turned the drugs he purchased over to Agent Petty. Petty testified that on the two occasions Lynch accompanied Gossett, Lynch and Gossett each submitted packets of cocaine base to him following their purchases; Petty also testified to the amounts purchased by Lynch. We find that the convictions on these counts are supported by sufficient evidence.

Next, Matata argues that the district court erred by refusing to allow his counsel to cross-examine Petty and other investigating agents about a September 1993 arrest in South Carolina. The arrest and subsequent search of Matata's car were not the subject of the criminal charges at issue in this case. During the trial, near the close of the Government's case, Matata's counsel informed the court that Matata wished to cross-examine the agents regarding the September 1993 incident, against the advice of counsel. During cross-examination of Petty, the Government objected to the line of questioning. Defense counsel stated that inquiry into the arrest and search might show that Petty violated Matata's constitutional rights, and the illegal conduct could be probative of his testimony. Both parties agreed that the arrest did not have any other relevance to the trial and that no evidence from that arrest and search was entered in the present criminal case. The court did not allow further questioning on the matter because the information was not relevant to the issues at trial.

A trial court's evidentiary rulings are normally reviewed for an abuse of discretion. See United States v. Fernandez, 913 F.2d 148, 154-55 (4th Cir. 1990). When a witness's credibility is in issue, specific instances of the witness's conduct may be inquired into on cross examination only if probative of truthfulness or untruthfulness. See Fed. R. Evid. 608(b). The trial court is vested with broad discretion to control the mode of interrogation and the presentation of evidence. See United States v. Gravely, 840 F.2d 1156, 1163 (4th Cir. 1988). Except for evidence of conviction of a crime as provided in Rule 609, extrinsic evidence of specific instances of conduct may not be used to impeach a witness's credibility. See Fed. R. Evid. 608(b); United States v. Bynum, 3 F.3d 769, 772 (4th Cir. 1993). The reason for the

5

rule is to avoid holding a series of mini-trials on witness credibility within the trial itself. See Bynum, 3 F.3d at 772. It was not an abuse of discretion for the district court to deny Matata's attempt to impeach the investigating agents' credibility based upon an unrelated series of events. To delve into that subject would create exactly the type of mini-trial to be avoided under Bynum. Such extrinsic conduct evidence is prohibited by Fed. R. Evid. 608(b).

Finally, Matata raises many issues with respect to sentencing. His main assignment of error is that the PSR included incorrect drug quantities and discussed counts in the indictment which had been dismissed, and therefore the PSR was prejudicial and resulted in an unfair sentence in contradiction to the stated purposes of the Sentencing Commission. The district court's factual findings are reviewed under the clearly erroneous standard, while its interpretation of guideline terms is reviewed de novo. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989).

District courts may take "relevant conduct" into account in determining a defendant's sentence whether or not the defendant has been convicted of the charges constituting the relevant conduct. See U.S. Sentencing Guidelines Manual § 1B1.3 (1997); United States v. Jones, 31 F.3d 1304, 1316 (4th Cir. 1994). The court must establish the amount of drugs attributable to a defendant for sentencing purposes by a preponderance of the evidence. See United States v. Irvin, 2 F.3d 72, 75 (4th Cir. 1993). Whether the government has met its burden of proof is a question of fact reviewed for clear error. See Jones, 31 F.3d at 1316 (citing Daughtrey, 874 F.2d at 217). The amount of cocaine base attributed to Matata was established by a preponderance of the evidence. Several witnesses testified to their participation in sales with Matata, their observation of cocaine base in Matata's possession, and their observation of Matata cooking the cocaine base.

Matata also attacks his sentence because only two of the other conspirators named in the indictment received higher sentences. A disparity in sentences between co-conspirators is not grounds to inquire into the propriety of the sentence. See United States v. Foutz, 865 F.2d 617, 622 (4th Cir. 1989).

6

Matata argues that his criminal record was improperly computed and used against him to enhance his sentence under 18 U.S.C. § 924(e)(1) (1994). Matata does not specify how he believes his criminal record was incorrectly computed. Further, an enhancement under § 924(e)(1) is appropriate in his case. Under 18 U.S.C. § 922(g)(1), it is unlawful for a person "who has been convicted [of a felony] in any court" to possess a firearm or ammunition. Violators of § 922(g)(1) are subject to possible sentence enhancement based on their criminal histories. Section 924(e)(1) provides: "In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, such person shall be . . . imprisoned not less than fifteen years . . . ." Matata was previously convicted of at least three violent felonies and/or serious drug offenses. Accordingly, the district court did not err in applying § 924(e)(1).

We therefore affirm the criminal judgment. We deny Matata's motion for an injunction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED