**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————

**No. 03-4869**

—————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL PHILLIP BOURQUE,

Defendant - Appellant.

—————

**No. 05-4267**

—————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL PHILLIP BOURQUE,

Defendant - Appellant.

—————

Appeals from the United States District Court for the District of
South Carolina, at Florence. Terry L. Wooten, District Judge.
(CR-02-336)

—————

Submitted: October 31, 2005      Decided: December 9, 2005

—————

Before LUTTIG, WILLIAMS, and SHEDD, Circuit Judges.

—————

Affirmed in part; dismissed in part by unpublished per curiam opinion.

———————————

C. Gordon McBride, Hartsville, South Carolina, for Appellant. Jonathan S. Gasser, United States Attorney, A. Bradley Parham, Assistant United States Attorney, District of South Carolina, Thomas E. Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Michael Phillip Bourque was convicted by a jury of aiding and abetting armed bank robbery, 18 U.S.C. §§ 2113(a), 2113(d), 2 (2000) (Count One), aiding and abetting the use of a firearm in a crime of violence, 18 U.S.C.A. §§ 924(c), 2 (West 2000 & Supp. 2005) (Count Two), and possession of a firearm by a convicted felon, 18 U.S.C.A. §§ 922(g)(1), 924(e) (West 2000 & Supp. 2005) (Count Three).  The court sentenced Bourque as an armed career criminal, 18 U.S.C.A. § 924(e); U.S. Sentencing Guidelines Manual § 4B1.4 (2002), and departed upward from the guideline range under USSG § 4A1.3.  The court imposed the statutory maximum sentence of 300 months on Count One, a concurrent sentence of 447 months on Count Three, and a consecutive sentence of eighty-four months imprisonment on Count Two, to be followed by a five-year term of supervised release.  The court also ordered Bourque to pay restitution in the amount of $349.50.  Bourque appeals his conviction and sentence.  We grant his motions for leave to file pro se supplemental briefs and affirm the conviction and sentence. We dismiss the appeal of the district court's decision not to depart downward.

At Bourque's trial, the government's evidence showed that, on March 14, 2002, Horry County, South Carolina, Police Officer Anthony Mueller, heard a BOLO ("Be on the Lookout") dispatch for a white male in a black pickup truck believed to be

- 3 -

involved in an armed bank robbery. As he drove toward the bank, Mueller met a burgundy-colored truck driven by Bourque. The passenger in the truck was Craig Crissman, who had robbed the bank a few minutes earlier, masked and armed with a handgun, while Bourque waited behind the wheel of Crissman's pickup truck. Mueller stopped the truck but, because it appeared to be the wrong color, he immediately told Bourque and Crissman they could go. Mueller then received another dispatch stating that the getaway truck had big tires, as Crissman's truck did. Mueller quickly stopped the truck a second time, removed Bourque and Crissman from the truck, and handcuffed them. After backup officers arrived, Mueller checked the vehicle for weapons and saw two firearms inside the cab of the truck. The truck was later searched pursuant to a search warrant, and the following items were seized: two loaded firearms, a ski mask, a pillowcase containing the proceeds from the bank robbery including bait money, a cell phone, and the jacket worn by the bank robber. While Bourque was being transported to the detention center, Mueller thanked Bourque for not trying to shoot him. Bourque responded that he had been about to shoot Mueller when Crissman talked him out of it. Crissman confessed to robbing the bank, and said that Bourque pressured him into doing it by threatening to have his family harmed if he did not.

Before the trial, Bourque moved to suppress all evidence seized from the truck and the statement he made to Mueller. The

district court denied the motion to suppress, having determined, first, that Officer Mueller's information from the BOLO was sufficient to support a reasonable suspicion that the truck was the getaway vehicle, and justified the second investigative stop of the truck under Terry v. Ohio, 392 U.S. 1 (1968). The court also held that a limited protective search of the cab of the truck was permissible under Michigan v. Long, 463 U.S. 1032 (1983).[1]

At sentencing, the district court grouped Counts One and Three together and determined that a combined adjusted offense level of 24 applied, which was increased to 34 because Bourque qualified for sentencing as an armed career criminal. Although Bourque had six criminal history points, his armed career criminal status placed him in criminal history category VI. His guideline range was 262-327 months. The district court departed upward based on the serious nature of his prior criminal conduct and the likelihood that he would commit future crimes, and imposed a guideline sentence of 447 months imprisonment, with a consecutive seven-year sentence for the § 924(c) conviction.

---

[1]The court further held that Bourque's statement to Mueller, given without a Miranda warning, was admissible because Mueller's statement was not intended to elicit a response from Bourque, and that the search warrant for the truck had not included any intentional misstatements although the facts in the affidavit varied somewhat from Mueller's testimony; the court noted that the location of the firearms in the truck was not material to the magistrate judge's finding of probable cause.

On appeal, Bourque first challenges the district court's denial of his motion to suppress. Bourque argues that, when Officer Mueller stopped the truck for the second time, there was insufficient evidence to give an objective police officer reasonable suspicion that the occupants were involved in criminal activity. He also contends that Mueller had no basis for a warrantless search of the truck, i.e., opening the door of the truck to inspect it, because the suspects had been handcuffed by then and were being detained some distance from the truck.

We review the district court's factual findings underlying a motion to suppress ruling for clear error, and the district court's legal determinations de novo. Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Bush, 404 F.3d 263, 275 (4th Cir.), cert. denied, 126 S. Ct. 289 (2005). When a suppression motion has been denied, this court reviews the evidence in the light most favorable to the government. United States v. Grossman, 400 F.3d 212, 216 (4th Cir. 2005). "The Fourth Amendment protects 'the people' against 'unreasonable searches and seizures.'" United States v. Hylton, 349 F.3d 781, 785 (4th Cir. 2003) (quoting U.S. Const. amend. IV), cert. denied, 541 U.S. 1065 (2004).

An officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."

Illinois v. Wardlow, 528 U.S. 119, 123 (2000); Terry, 392 U.S. at 30. To conduct a Terry stop, there must be "at least a minimal level of objective justification for making the stop." Wardlow, 528 U.S. at 123; see also United States v. Hensley, 469 U.S. 221, 232 (1985). Reasonable suspicion requires more than a hunch but less than probable cause. Id. at 123-24. In assessing police conduct in a Terry stop, courts must look to the totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 8 (1989).

Officer Mueller made the second Terry stop after receiving a report of an armed bank robbery in which the robber was a white male and the getaway vehicle was believed to be a black pickup truck with oversized tires. Within a few minutes after he received the alert, Mueller encountered a dark-colored pickup truck with large tires coming from the direction of the bank and occupied by two white males. These facts provided Officer Mueller with a reasonable and articulable suspicion that the occupants of the truck were engaged in criminal activity, and justified his decision to stop the truck, remove Bourque and Crissman from the truck, and inspect the truck for other suspects or weapons. See Maryland v. Wilson, 519 U.S. 408, 415 (1997) (no Fourth Amendment violation in requiring defendant to exit car to be frisked); Michigan v. Long, 463 U.S. 1032, 1049 (1983) (no Fourth Amendment violation for searching car's passenger compartment where a gun may have been secreted); United States v. Holmes, 376 F.3d 270, 280 (4th Cir.

2004), (holding that <u>Long</u> authorizes protective search of vehicle for weapons during <u>Terry</u> stop, even when suspect is outside vehicle and effectively under police control), <u>cert. denied</u>, 125 S. Ct. 633 (2004).

Bourque argues that Mueller's testimony at the suppression hearing was not clear as to whether he could see the guns from outside the truck or only after he opened the driver's side door.  Mueller first testified that he was not sure whether the door was open when he looked in the truck.  On cross-examination, he testified that the guns were plainly visible, but only after the door was opened.  Because Mueller had authority to search the truck for weapons under <u>Long</u> and <u>Holmes</u>, whether he could see the firearms before opening the truck door was not significant.  Because Mueller suspected Bourque and Crissman of involvement in an armed robbery, and no weapon was discovered on either suspect, a search of the truck for weapons was clearly permissible.  Therefore, the district court did not err in denying the motion to suppress the evidence seized from the truck.

Bourque next argues that the evidence was insufficient to establish that he was present at the bank during the robbery. Bourque contends that the government's case depended entirely on Crissman's claim that he committed the robbery under duress and that Crissman's testimony on this point was not credible.  We review the district court's decision to deny a Rule 29 motion de

novo. United States v. Lentz, 383 F.3d 191, 199 (4th Cir. 2004), cert. denied, 125 S. Ct. 1828 (2005). Where, as here, the motion was based on insufficient evidence, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). This court "ha[s] defined 'substantial evidence,' in the context of a criminal action, as that evidence which 'a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" United States v. Newsome, 322 F.3d 328, 333 (4th Cir. 2003) (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).

Bourque and Crissman were found together in the vehicle seen leaving the bank a short time after the robbery, and the robbery proceeds including bait money were discovered in the vehicle. The jury found Crissman's testimony that Bourque aided and abetted the robbery credible. See United States v. Sun, 278 F.3d 302, 313 (4th Cir. 2002) ("[W]e do not review the credibility of the witnesses and assume the jury resolved all contradictions in the testimony in favor of the government."). Therefore, this evidence was sufficient to sustain Bourque's conviction for aiding and abetting the bank robbery and the related firearms counts.[2]

---

[2]In his pro se supplemental brief, Bourque maintains that the government failed to prove that the bank was a federally-insured financial institution at the time of the robbery. We are satisfied

- 9 -

Although Bourque acknowledges that we lack authority to review the district court's decision not to depart because the court understood its authority to depart and exercised its discretion not to depart, see United States v. Wood, 378 F.3d 342, 351 n.8 (4th Cir. 2004); United States v. Bayerle, 898 F.2d 28, 30-31 (4th Cir. 1990), he seeks review of the sentencing court's decision. We dismiss this portion of the appeal for lack of jurisdiction.

Bourque next contends that the district court abused its discretion in departing upward because the sentence imposed was disproportionate to the crime and thus violated the Eighth Amendment prohibition on cruel and unusual punishment and because Crissman received a lesser sentence. We disagree. "Proportionality review is not available for any sentence less than life imprisonment without the possibility of parole." United States v. Ming Hong, 242 F.3d 528, 532 (4th Cir. 2001). Because Bourque has not been sentenced to life imprisonment, we will not review his sentence for proportionality. And the fact that Crissman received a lesser sentence does not make Bourque's sentence disproportionate to the crime, because "district courts are not obliged to make comparisons of the relative harshness of sentences imposed against various defendants." United States v.

_____

that the testimony of the bank vice president established that fact.

Foutz, 865 F.2d 617, 622 (4th Cir. 1989). But even if we would examine the proportionality of Bourque's sentence, it is not disproportionate in light of his recidivism. See Ewing v. California, 538 U.S. 11, 29-30 (2003) (sentence of twenty-five years to life for recidivist did not violate Eighth Amendment).

Bourque also argues the district court violated his Sixth Amendment rights when sentencing him. In United States v. Booker, the Supreme Court held that the mandatory manner in which the federal sentencing guidelines required courts to impose sentencing enhancements based on facts found by the court by a preponderance of the evidence violated the Sixth Amendment. 125 S. Ct. 738, 746, 750 (2005).

Bourque was sentenced before the Supreme Court decided Booker or its predecessor, Blakely v. Washington, 542 U.S. 296 (2004). Bourque does not allege that the district court erred in applying the guidelines as mandatory, but in his supplemental brief he does allege that the district court violated his Sixth Amendment rights by sentencing him to a term of imprisonment greater than he would have received under the guidelines based on facts found by the jury or admitted by him. Bourque's Sixth Amendment rights were not violated, however, because the only facts the district court considered when enhancing Bourque's sentence were his prior convictions, and the Sixth Amendment does not demand that prior convictions be found by the jury or admitted by the defendant

before they are used as the basis for enhancing a sentence. United States v. Cheek, 415 F.3d 349, 354 (4th Cir. 2005). Because the district court only referenced Bourque's prior convictions for facts justifying a sentence greater than the guideline range, we conclude that no Sixth Amendment error occurred.

Last, Bourque contends that the loss of certain photographs of the truck introduced into evidence by the government at trial has deprived him of the opportunity for a full review of the propriety of the warrantless search of the truck. He alleges that a meaningful review of his conviction is not possible without the photographs and that reversal of his conviction or a new trial is required.

Under Fed. R. App. P. 10(a)(1), the record on appeal includes original exhibits filed in the district court. A defendant who seeks a new trial because the record is incomplete must show that his appeal is prejudiced by the absence of the missing portions of the record. United States v. Brown, 202 F.3d 691, 696 (4th Cir. 2000). If the record can be reconstructed by the district court or if the district court determines that the missing portions of the record are not relevant to issues the defendant wishes to raise on appeal, a new trial will not be granted. See United States v. Novaton, 271 F.3d 968, 993 (11th Cir. 2001). We previously remanded this case for an evidentiary hearing on this issue. The district court determined on remand

that substitute photographs provided by the government from the same series of photographs were adequate replacements for the missing photographs. Bourque does not seriously challenge this finding on appeal. Therefore, we conclude that he has not demonstrated prejudice and that the loss of the trial photographs does not warrant either reversal of his conviction or a new trial.[3]

We therefore affirm the conviction and sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED IN PART</u>;
<u>DISMISSED IN PART</u>

---

[3]We have considered the remaining issues raised in the pro se supplemental briefs and find them to be without merit.