FILED
United States Court of Appeals
Tenth Circuit

February 11, 2026

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

THOMAS CARL DODDS, JR.,

  Petitioner - Appellant,

v.

CARRIE BRIDGES,

  Respondent - Appellee.

No. 25-7021
(D.C. No. 6:20-CV-00470-RAW-DES)
(E.D. Okla.)

_____

### ORDER AND JUDGMENT*
_____

Before **CARSON**, **BALDOCK**, and **KELLY**, Circuit Judges.

_____

Thomas Carl Dodds, Jr., an Oklahoma state prisoner appearing pro se, appeals

the district court's denial of his 28 U.S.C. § 2254 habeas corpus application.  This

court granted Dodds a certificate of appealability (COA) concerning whether the

sentencing court violated his due process rights by relying on two prior convictions

that had been vacated and expunged.  Exercising jurisdiction under 28 U.S.C. 1291,

---

* After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

we affirm.  We also warn Dodds about what appears to be his misuse of generative artificial intelligence in researching and drafting his opening brief.

## I.  BACKGROUND

In 2017, Dodds entered blind pleas of nolo contendere to five counts in two Oklahoma state court cases:  second degree rape, lewd molestation, soliciting sexual conduct or communication with a minor by use of technology, contributing to the delinquency of a minor, and procure/produce/distribute/possess juvenile pornography after former conviction of two or more felonies.  At the sentencing hearing, the judge heard testimony that in 1993, when Dodds was still a juvenile, he was convicted of lewd molestation and second-degree burglary, but the sentences for those convictions were vacated in post-conviction proceedings because Dodds had not been properly certified as an adult before he pleaded nolo contendere.  The convictions were also expunged.  These convictions and the vacatur of the sentences were also listed in a presentence investigation report.

After the testimony, the judge confirmed with counsel for both parties that those convictions had been vacated and expunged.  The judge then recounted three of Dodds's other prior felony convictions and observed that Dodds had "a long history of criminal behavior.  The 1993 lewd molestation, you know, you can take that one way or the other.  Mr. Dodds entered a guilty plea to it, but it was later vacated.  So, that kind of cuts both ways as to what to make of it."  R. vol. I at 364:2–5.  The judge then expressed his concern with the "multiple counts of . . . predatory sexual behavior towards children" in the two cases for which he was imposing sentence,

2

describing it as "something that society can't tolerate." *Id.* at 364:7–9. The judge characterized this as "the most legitimate reason for incarcerating somebody, so that they don't do further damage to people in society." *Id.* at 394:10–12. The judge sentenced Dodds to various sentences on the five counts, totaling 40 years in prison with 10 years suspended.

After sentencing, Dodds moved to withdraw his pleas in both cases. Although Dodds advanced several grounds for withdrawing his pleas, we focus only on the basis relevant to this appeal—that the sentencing court had improperly relied on the 1993 convictions. The sentencing judge held a hearing and denied Dodds's motion. The judge explained that even though the 1993 juvenile convictions had been vacated and expunged, the judge was entitled to consider a "very wide rang[e]" of information when determining sentence. *Id.* at 371:1. The judge continued: "But even so, I think the record reflects that I gave very little consideration to" the "1993 lewd molestation." *Id.* at 371:2–3. Quoting from the sentencing transcript, the judge observed that at sentencing, he had emphasized the offense conduct in the cases before him and the need to protect society from predatory sexual behavior toward children. Finally, the judge added that "almost all consideration and sentencing in this case was due to what [Dodds] was charged with, what he pled no contest to, and his multiple prior felonies." *Id.* at 371:17–20.

Dodds appealed the denial of his motion to withdraw his plea, arguing that he had received ineffective assistance of counsel in connection with his plea-withdrawal motion. The Oklahoma Court of Criminal Appeals (OCCA) denied certiorari.

3

Dodds next filed a pro se application for post-conviction relief in state district court. Relevant here, he argued that by basing his sentences in part on convictions that had been vacated on constitutional grounds, the sentencing court violated his Fourteenth Amendment due-process rights under *United States v. Tucker*, 404 U.S. 443 (1972). In denying Dodds's application, the post-conviction court concluded that the sentencing judge did not improperly rely on the 1993 convictions because he was aware that those convictions had been vacated and had primarily based the sentence on public-safety concerns. Dodds appealed that ruling to the OCCA, which affirmed.

Dodds then filed a pro se 28 U.S.C. § 2254 application for habeas corpus. Relevant here, Dodds repeated his *Tucker* claim. The district court denied relief and denied a COA.

We granted a COA on the Fourteenth Amendment *Tucker* claim, s*ee* 28 U.S.C. § 2253(c)(1)(A) (requiring a COA to appeal the denial of a § 2254 application), and now resolve it.

## II.  STANDARD OF REVIEW[1]

Our standard of review depends on whether the OCCA adjudicated Dodds's Fourteenth Amendment claim on the merits. *See Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011). If it did, then our review would be deferential under § 2254(d), asking only whether the OCCA's decision was (1) "contrary to, or

---

[1] Because Dodds represents himself, we construe his filings liberally, but we may not act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)–(2). If the OCCA did not adjudicate the claim on the merits, then § 2254(d) would not apply, and we would review "questions of law de novo." *Hooks v. Ward*, 184 F.3d 1206, 1238 (10th Cir. 1999).

Dodds seeks de novo review. He argues that the OCCA did not decide his Fourteenth Amendment *Tucker* claim on the merits because the OCCA did not cite *Tucker* or refer to any federal constitutional standard.[2]

We conclude that the OCCA adjudicated the *Tucker* claim on the merits. Federal courts typically presume that a state court has adjudicated the merits of a federal claim, even where the state court does not mention the federal basis of the claim or cite any federal law in support of its ruling. *Simpson v. Carpenter*, 912 F.3d 542, 583 (10th Cir. 2018). This "presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Harrington v. Richter*, 562 U.S. 86, 99–100 (2011).

---

[2] Dodds also argues that de novo review applies because the OCCA unreasonably determined the facts when it "misstated the timeline of events by suggesting the convictions were vacated after sentencing—an assertion refuted by the record." Aplt. Opening Br. at 12. But he provides no supporting record citation, and we are unable to find any such misstatement in the OCCA's decision. Moreover, even if the OCCA made such a misstatement, Dodds has not explained (and we do not see) why it would entitle him to de novo review.

In *Tucker*, the Supreme Court determined that remand to the sentencing court was required because that court had based its sentence in part on prior convictions that were conclusively rendered unconstitutional by the retroactive application of *Gideon v. Wainwright*, 372 U.S. 335 (1963), decided some ten years after the sentencing at issue in *Tucker*. *See* 404 U.S. at 447–48 & n.4.

Although the OCCA did not cite *Tucker*, it did correctly identify Dodds's claim as a "Fourteenth Amendment claim" involving whether "the sentencing court improperly considered vacated convictions." R. vol. I at 82–83. In determining that the post-conviction court had not "abuse[d] its discretion" in rejecting that claim, the OCCA relied on a state-law presumption—"'when a trial court operates as the trier of fact,'" it considers "'only competent and admissible evidence . . . in reaching [its] decision'" *Id.* at 82 (quoting *Long v. Oklahoma*, 74 P.3d 105, 107 (Okla. Crim. App. 2003)). Reliance on a state-law standard can suffice as an adjudication on the merits of a federal claim if the state standard "is at least as protective as the federal standard." *Johnson v. Williams*, 568 U.S. 289, 301 (2013); *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that a state court adjudicated the merits of a federal claim despite relying solely on state-law principles where those principles provided greater protection than federal law).

Dodds has not argued that the *Long* standard is less protective than the *Tucker* standard. Nor do we see how *Long* was less protective of Dodds's rights than *Tucker*; both preclude consideration of impermissible information. We therefore conclude that the OCCA adjudicated the Fourteenth Amendment *Tucker* claim on the

6

merits.  Accordingly, we review the OCCA's decision under § 2254(d)'s deferential standard.  *See Byrd*, 645 F.3d at 1166 (stating this standard "demands that state-court decisions be given the benefit of the doubt," and "prohibits us from substituting our own judgment for that of the state court" (internal quotation marks omitted)).

### III.  DISCUSSION

**A.    Merits**

Dodds argues that under *Tucker*, any consideration at sentencing of prior convictions that have been vacated on a constitutional ground is a Fourteenth Amendment due-process violation even where, as here, the sentencing court is aware that the convictions have been vacated as unconstitutional.  We do not read *Tucker* so broadly.

The concern driving the remand for resentencing in *Tucker* was that, at federal sentencing in 1953, the judge had considered two of the defendant's prior state convictions, but those convictions were "retroactive[ly]" deemed "wholly unconstitutional under *Gideon*."[3]  *Tucker*, 404 U.S. at 447 & n.4.  The Court

---

[3] "The Gideon case established an unequivocal rule making it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one."  *Tucker*, 404 U.S. at 449 (internal quotation marks omitted).  As noted, Dodds's 1993 convictions were vacated and expunged not because of a *Gideon* violation, as in *Tucker*, but because Dodds had not been properly certified as an adult.  *See* R. vol. I at 304–05.  We will assume, for the sake of argument, that *Tucker*'s holding (mistaken reliance at sentencing on a prior conviction that was obtained in violation of *Gideon* violates due process) constitutes clearly-established law applicable to Dodds's 1993 convictions for § 2254(d)(1) purposes.  *See Andrew v. White*, 604 U.S. 86, 94–95 (2025) (explaining that "[g]eneral legal principles can constitute clearly established law for purposes of [§ 2254(d)(1)] so long as they are holdings of this Court," and that "certain principles are fundamental enough that

explained that "the real question" was "whether the sentence in the 1953 federal case might have been different if the sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained." *Id.* at 448. The Court concluded that the sentence had not been "imposed in the informed discretion of a trial judge" but was instead "founded at least in part on misinformation of a constitutional magnitude" and "assumptions concerning [the defendant's] criminal record which were materially untrue." *Id.* at 447 (internal quotation marks omitted). The Court further explained that if the trial judge had been aware that the two prior convictions were constitutionally infirm, then "the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding." *Id.* at 448.

In contrast here, the sentencing judge *was* aware that Dodds's 1993 lewd molestation conviction had been vacated and expunged.[4] In fact, the judge expressly sought clarification on the point. Thus, the judge did not, as was the case in *Tucker*, base the sentence on any "assumptions concerning his criminal record which were materially untrue," or "misinformation of a constitutional magnitude." *Id.* at 447. Rather, the judge was fully informed of "the factual circumstances of [Dodds's]

---

when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt"); *but see House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) (instructing "that Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

[4] There is no indication that the sentencing judge gave any consideration to the vacated 1993 second-degree burglary conviction.

background." *Id.* at 448.  Given these distinctions, we are unpersuaded the OCCA's

decision was either contrary to or an unreasonable application of *Tucker*.  *See Byrd*,

645 F.3d at 1166 (stating that under § 2254(d)(1) "we grant relief only if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or . . . decides a case differently than the Court has on a set of

materially indistinguishable facts").

Even further distinguishing *Tucker* are the sentencing judge's explicit

comments that the vacated conviction could be taken "one way or another" and "cuts

both ways," R. vol. I at 364:2–3, 5, together with his observation that proper

sentencing considerations "are very wide ranging," *id.* at 370:25–371:1.  So to the

extent Dodds argues the state courts unreasonably determined the facts by finding the

sentencing judge had not improperly relied on the vacated convictions, we are

unpersuaded.  *See* § 2254(d)(2).  Rather, this record reasonably allowed a conclusion

that the sentencing judge considered only the alleged *conduct* (lewd molestation)

associated with the charged offense, not the conviction itself.  Such conduct falls

within the constitutionally permissible scope of information a sentencing court can

consider when fashioning an appropriate sentence.  *See Hatch v. Oklahoma*, 58 F.3d

1447, 1465 (10th Cir. 1995) ("[T]he admission of evidence of unadjudicated offenses

at a sentencing proceeding does not violate due process."), *overruled on other*

*grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001)).

Thus, the OCCA's rejection of Dodds's claim did not contradict or unreasonably

apply controlling federal law.  *See Tucker*, 404 U.S. at 446 (federal sentencing judge

"may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come").

Finally, unlike the Supreme Court in *Tucker*, we harbor no doubt that Dodds's sentence would have been the same even if the sentencing judge had not given "very little consideration" to "[t]he 1993 lewd molestation," R. vol. I at 371:2–5 (internal quotation marks omitted). At sentencing, the judge emphasized his view that "the most legitimate reason for incarcerating somebody," was to prevent further "predatory, sexual behavior towards children." *Id.* at 364:10–11. This again supports the OCCA's rejection of Dodds's claim, because it demonstrates the judge imposed a sentence he thought was necessary to address that overriding purpose, regardless of whether Dodds had been unconstitutionally convicted of lewd molestation in 1993.

In sum, we conclude that Dodds has not shown that the OCCA's rejection of Dodds's Fourteenth Amendment due-process claim was contrary to or an unreasonable application of *Tucker* or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* § 2254(d)(1)–(2).

## B.    Opening-brief problems

In his opening brief, Dodds attempts to persuade this court to reverse by relying heavily on a case he cites as *United States v. Farrow*, 599 F.2d 154 (8th Cir. 1979). Dodds states that in this case, the "court was unequivocal that due process is violated when a sentence is influenced by convictions known to be unconstitutional,

regardless of the judge's awareness." Aplt. Opening Br. at 7. Dodds also offers a quote purportedly taken from this case: "'It is no answer to say that the sentencing judge was aware that the convictions were constitutionally invalid. *Tucker* teaches that reliance on such convictions—whether knowing or unknowing—violates due process.' *Farrow*, 599 F.2d at 158." Aplt. Opening Br. at 7.

As the State points out in its response brief, the citation Dodds provides for the alleged *Farrow* case leads to a page in the middle of *Illinois v. City of Milwaukee*, 599 F.2d 151 (7th Cir. 1979), *vacated*, 451 U.S. 304 (1981). That case involved a nuisance action; it has no relevance to this appeal.

The State also points out several other fabricated case citations in Dodds's brief, and we have uncovered one more. We will specifically address two of these citations. On page five of his opening brief, Dodds provides what purports to be a quotation from a case he identifies as *United States v. Matthews*, 7 F.3d 1552, 1555 (11th Cir. 1993): "A sentencing judge's own comments acknowledging that he 'looked at' or 'considered' a prior conviction are sufficient to establish reliance under *Tucker*." But the reporter citation Dodds provides leads to a page in the middle of *Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993), a civil rights case with no relevance to this appeal. On page four he cites *United States v. Mateo*, 476 F.3d 179, 184 (3d Cir. 2007), and on page six he provides a quotation purportedly taken from this *Mateo* case: "Reliance can be shown by the sentencing court's express remarks referencing the prior conviction." Dodds's citations, however, lead to pages in the middle of a bankruptcy case, *In re O'Lexa*, 476 F.3d 177 (3d Cir. 2007), and an

11

employment-discrimination case, *Wishkin v. Potter*, 476 F.3d 180 (3d Cir. 2007).

Neither of these cases has any relevance to this appeal.

In his reply brief, Dodds attempts to explain these problems, stating that the cases cited in his opening "brief are real decisions that reflect the principles for which they were cited," but "several citations were inaccurate due to errors introduced when an outside source prepared the typed brief."  Aplt. Reply Br. at 1. He refers to these misrepresentations as "transcription errors."  *Id.* at 2.  He claims that the correct "*Farrow*" citation is *Farrow v. United States*, 580 F.2d 1339 (9th Cir. 1978), which is a real case, and that the quotation he attributed to *Farrow* was an "argument" that "was mistakenly made a quote."  Aplt. Reply Br. at 2–3.  He claims the correct citation for *Mateo* is *United States v. Mateo*, 471 F.3d 1162 (10th Cir. 2006), which is a real case, and that the citation to *Matthews* should have been a citation to this newly-identified *Mateo* case.  He adds that the quotation he attributed to *Matthews* is not a quotation at all but instead his own argument.  He makes similar statements regarding two other faulty case citations.

We highly doubt the veracity of Dodds's explanation.  The *Farrow* case he identifies in his reply brief does not stand for the proposition he attributed to it—that even if aware that a prior conviction has been vacated on constitutional grounds, a sentencing judge violates *Tucker* by relying on that conviction.  *Farrow* says nothing of the sort but instead explains that a successful *Tucker* challenge requires, among other things, a showing of "the sentencing judge's *mistaken* belief that the prior conviction was valid."  *Farrow*, 580 F.2d at 1345 (emphasis added).  As for the

newly-identified *Mateo* case, it did not involve a *Tucker* challenge at all. The only remotely relevant aspect of *Mateo* is the conclusion that the federal district court did not err when it considered uncontested facts included in a presentence report. *See* 471 F.3d at 1166–68. That conclusion is consistent with our disposition of Dodds's *Tucker* claim. And Dodd's assertion that the *Matthews* citation should have been to *Mateo* wholly fails to explain how an entirely fictitious citation, accompanied by a purported quotation taken from that fictitious case, surfaced in his brief due to the use of an "outside source" to type the brief.

Dodds's erroneous citations and quotations appear to be fabrications resulting from the use of a generative artificial intelligence (AI) tool, such as ChatGPT. *See Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 497 (D. Wyo. 2025) ("It is . . . well-known in the legal community that AI resources generate fake cases."). Such fabrications are referred to as "AI hallucinations." *See Jones v. Kankakee Cnty. Sheriff's Dep't*, ___ F.4th ___, 2026 WL 157661, at *2 (7th Cir. Jan. 21, 2026) (defining "a so-called AI 'hallucination'" as "a circumstance where an AI large language model generates an output that is fictional, inaccurate, or nonsensical"). There is nothing inherently problematic with the use of artificial intelligence to help prepare legal materials, but its careless use can waste both judicial resources and the opposing party's time and money, and it can damage the credibility of the legal system. *See Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023).

We can sanction litigants who make such misrepresentations, or dismiss their appeals. *See, e.g., Grant v. City of Long Beach*, 96 F.4th 1255, 1257 (9th Cir. 2024)

13

(dismissing appeal because of fabricated citations); *Park v. Kim*, 91 F.4th 610, 615–16 (2d Cir. 2024); Fed. R. Civ. P. 38; 10th Cir. R. 46.5(B), (C).  But we decline to do so in the circumstances here.  However, we warn Dodds—and all pro se litigants and counsel appearing before this court—of the responsibility to ensure that citations to legal authority are not fabrications but instead point to real cases that at least arguably stand for the propositions for which they are cited.

## IV.  CONCLUSION

We affirm the district court's judgment.  We deny Dodds's motion to appoint counsel.  We grant Dodds's motion to proceed on appeal without prepayment of costs or fees and remind him of his obligation to continue making partial payments until the filing fee is paid in full.  *See* 28 U.S.C. § 1915(a)(1) (authorizing courts to excuse only "prepayment of fees").

Entered for the Court

Bobby R. Baldock
Circuit Judge